# No. 23-865/23-869 (39S-1)

## Filed on 10/16/2023 8:05:22 AM

*In the United States Court of Appeals For the Second Circuit*

—————

*Ulysses T. Ware (Appellant)*

*v.*

*United States, et al. (Appellee).*

————————————

**The Parties' Stipulated Supplemental Emergency Reliefs.**

## Ulysses T. Ware's Hobbs Act Kidnapping[1] and Murder for Hire (crimes of violence)--Actual Innocent, Dispositive, Emergency Rule 27-1 Motion for Relief.[2]

---

[1] See Ex. 8, infra—the Sept. 1, 2004, Atlanta, GA Hobbs Act attempted armed robbery, RICO 18 USC 1961(6)(B), unlawful debt collection activities, extortion, kidnapping, attempted murder for hire conspiracy executed by federal District Judges (NDGA) Thomas W. Thrash, Jr., Leonard B. Sand, (SDNY), Circuit Judge Peter W. Hall, William H. Pauley, III, (SDNY), Circuit Judge Robert A. Katzmann, Robert W. Sweet, (SDNY) Kenneth A. Zitter, Alpha Capital, AG, LH Financial Services, Ari Rabinowitz, the U.S. Marshals, et al. against Appellant Atlanta, GA lawyer Ulysses T. Ware, Esq. to **_collect_** GX 1-4, (criminal usury, convertible promissory notes), the NYS Penal Law, 190.40, loan sharking, unlawful debt.

[2] 18 USC §1958 renders it illegal: 1) to travel or use facilities of interstate or foreign commerce; 2) with intent that *a murder* in violation of State or Federal law be committed; 3) for money or other pecuniary compensation. *See United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993). The government is not required to prove that a defendant intended or knew that the mails or any other facility of interstate commerce would be used or that interstate travel would occur. *United States v. Edelman*, 873 F.2d 791, 794-95 (5th Cir. 1989). Rather, a defendant must use or cause another to use such a facility with the intent that a murder be committed. *See United States v. Winter*, 33 F.3d 720, 721 (6th Cir.), *cert. denied*, 115 S.Ct.

Appellant Ulysses T. Ware's Brady Demand on Attorney General Merrick B. Garland[3], Andre Damian Williams, Won Shin, Edgardo Ramos, the District Court (SDNY) Record Department (Custodian of Records), Laura Taylor-Swain, Robert D. Sack, Amalya L. Kearse, and the U.S. Probation Office (SDNY), Pursuant to 28 USC 519 _for the Immediate Search, Disclosure, and Production of all Brady evidence and Judicial Public Records_ associated with Government Witness Jeremy Jones; Grand Jury and Trial Witnesses—_unregistered_ broker-dealer Ari Rabinowitz, Kenneth A. Zitter, FRE 404(b) witness former SEC lawyer Jeffrey B. Norris, Myron Williams, Carlton Epps, Elrico Sadler, Charles H. Jackson, and Vanessa G. Beckett, Leonard A. Churn, Bridgett Hallman, and Andrea Johnson, M.D.

---

1148 (1994). According to the legislative history, § 1958 covers both the "hit man" and the contractor [**mob boss** Ari Rabinowitz, **forger** Konrad Ackermann, **fugitive** Thomas Badian, **convicted felon** Edward M. Grushko, Leonard B. Sand, Kenneth A. Zitter, David N. Kelley, Peter W. Hall, Robert A. Katzmann, et al.] under the theory that **_the contractor causes the hit man_** to travel or use facilities in interstate commerce. S. Rep. 225 at 306. According to confidential sources the Hobbs Act RICO business intelligence investigation into New York-based Andre Damian Williams, Colleen McMahon, Frank V. Sica, **Tailwind Capital Management LLP**, David N. Kelley, Alexander H. Southwell, Baker & McKenzie, LLP, Kilpatrick, Townsend, & Stockton, LLP, LH Financial Services, Alpha Capital, AG (Anstalt), Ari Rabinowitz, Konrad Ackermann, Leonard B. Sand, Peter W. Hall, Robert A. Katzmann, Amalya L. Kearse, Robert D. Sack, Edgardo Ramos, Laura Taylor-Swain, Debra Ann Livingston, William H. Pauley, III, Robert W. Sweet, et al., is ongoing, and numerous witnesses have been interviewed who have **_personal knowledge_** of the facts and circumstances of other murders, kidnappings, extortion, payoffs, kickbacks, gifts, favors, illegal gratuities, bribery, grand jury fraud, bankruptcy conspiracy, judicial bribery, theft of judicial court records, prosecutorial misconduct conspiracy, racketeering, conspiracy, unlawful debt collection, loan sharking, and money laundering 18 USC 1961(1) RICO predicate offenses.

[3] Merrick B. Garland, was a former **_Circuit Judge_** on the Court of Appeals for the D.C. Circuit. See **_In re Sealed Case_**, 185 F.3d 887 (D.C. Cir. 1999) (Garland, J.) (ordered the government to "search for," and "disclose" all plea and cooperation agreements of all witnesses or persons involved in criminal proceedings—ruled the government had a Brady "duty to search" for all cooperation agreements (Brady materials) and disclose what was found to the defendant). Cf. alleged Sept. 2006 null and **_void ab initio_** Rule 11 [perjury] plea and USSG 5k1.1 [perjury] cooperation contracts of a person whom **_Merrick B. Garland and the DOJ_** claim is "Jeremy Jones." New evidence implicates Garland, his former law clerk, Damian Williams, NY Senator Charles Ellis Schumer, and other federal judges and prosecutors in a **murder for hire conspiracy** that involves **NYC Mob Boss Soloman Obstfeld**, the former CEO of LH Financial Services, the boss and control person for 02cv2219 (SDNY) lawsuit plaintiff international loan sharking/money laundering/extortion/murder criminal enterprise Alpha Capital, AG. See Ex. 14, infra, and Appx. 53, 54, and 55 are attached hereto.

Respectfully submitted by:

/s/ Ulysses T. Ware

The Office of Ulysses T. Ware

123 Linden Blvd

Ste 9-L

Brooklyn, NY 11226

(718) 844-1260

utware007@gmail.com

Monday, October 16, 2023

(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire Conspiracy Rule 27-1 emergency motion.

IV    October 14, 2023--The Parties' Joint Stipulated Proposed Order for Relief.

# No. 23-865/23-869

**United States Court of Appeals**
**For the Second Circuit**

_____X

*Ulysses T. Ware,*
        *Appellant-Petitioner,*

*v.*                                                                  *Case No. 23-865/23-869*

*The United States., et al.,*
        *Respondents.*

_____X

━━━━━━━━━━━━━

        **Proposed Joint Stipulated Rule 27-1 Emergency  Murder for Hire Order for Relief.**


    **WHEREAS**,  on Thursday, October 12, 2023, Appellant, presented to the Court

**Appellant's Emergency Murder for Hire  Rule 27-1 Motion, Certificate of No Opposition to the**

**entry of Proposed Order, and the Parties' Joint  Stipulated Proposed Order.**

    **WHEREAS**, Appellant has submitted to the Court a Certificate of No Opposition by

Appellee to the requested reliefs.

    **WHEREAS,** Appellant presented to the Court a legally and factually sufficient Rule 27-1

motion supported by undisputed clear and convincing evidence, which set out sufficient factual

Page **4** of **17**
Monday, October 16, 2023
(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire
Conspiracy Rule 27-1 emergency motion.

and legal details and foundational factual predicates that this Court finds legally and factually sufficient to enter the requested reliefs.

**WHEREAS**, the Court takes judicial notice, FRE 201(b), of the 02cv2219 (SDNY) *voluntary* dismissal with prejudice by the defendants, *after the statute of limitation had run on all claims*, Dkt. 90, pursuant to Fed. R. Civ. P. 41(a)(2).

**WHEREAS**, the Court takes judicial notice, FRE 201(b), of Chief Judge Wendy L. Hagenau's *moot orders* entered in ***In re Group Management Corp.,*** 03-93031 (BC NDGA), Dkt. 256, 274, and 275, *entered while the bankruptcy court lacked jurisdiction over G 1-4, GX 5, and the 02cv2219 (SDNY) proceedings*.

**WHEREAS**, the Court takes judicial notice, FRE 201(b), of District Judge (SDNY) Colleen McMahon's *moot orders* entered in 02cv2219 (SDNY), Dkt. 119, 120, 137, 141, and 151, *entered while the district court lacked jurisdiction over GX 1-4, GX 5, and the 02cv2219 (SDNY) proceedings*.

**WHEREAS**, the Court takes judicial notice, FRE 201(b), of District Judge Ramos' Dec. 12, 2022, Dkt. 126, moot order that purported to convert Appellant's 22cv3409 (SDNY) 2241 actual innocent habeas corpus petition to a ***moot*** 2255 motion: deliberately and intentionally entered unlawful court orders *entered by Judge Ramos while Ramos knew the **U.S. v. Ware**, 04cr1224 (SDNY) and **U.S. v. Ware,** 05cr1115 (SDNY) district courts lacked jurisdiction to conduct moot,*

*ultra vires 2255 proceedings over moot federal sentences terminated by operation of law on May*

*23, 2022*.

**WHEREFORE, IT IS SO ORDERED** this Court **GRANTS** the requested Supplemental

Emergency Reliefs, and **ORDERS** the following relief be **ENTERED AND GRANTED**, to wit**:**

1. **IT IS ORDERED THAT** (I) Appellee, the United States, by and through the U.S. Dept of

   Justice, (the "**DOJ**"), (A) shall file under oath, as an officer of the court, into this Court and

   each respective district court sub judice, 04cr1224, 05cr1115, and 02cv2219, (the "**District**

   **Courts**"), and serve the same on Appellant not later than **Monday, October 16, 2023, by**

   **10:00 AM, time of the essence**, a certified 15 USC 78p(b) financial audit and accounting,

   (the "**Accounting**"), (B) for each plaintiff in ***Alpha Capital, AG, et al. v. Group***

   ***Management Corp., et al.***, 02cv2219 SDNY) lawsuit, including for Konrad Ackerman,  Ari

   Rabinowitz, LH Financial Services, and Union Atlantic Capital, LLP, jointly (the "**Group**"),

   (C) the Accounting is to in chronological order, beginning from January 1, 2001, and

   ending on December 31, 2010, (D) list and details every trade executed or made in Group

   Management Corp.'s equity securities by the Group, (E) list the number of shares bought

   and sold, or sold and repurchased in GPMT's equity securities by each member of the

   Group, (F) list the profits and proceeds realized by the Group from each trade listed in

   part E, (G) list the brokerage, and the brokage account identifying name and account

   number used to execute each trade listed in Part E, (H) list the name of the bank and the

   bank account number for each account used by the Group to receive or transfer the

Page **6** of **17**
Monday, October 16, 2023
(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire
Conspiracy Rule 27-1 emergency motion.

profits or proceeds listed in Part F; and (II) Appellee is to file into this Court and the respective District Courts and serve a copy of the same on Appellant copies of the SEC, FINRA, and NYS Dept of Finance broker-dealer registration records for each 02cv2219 (SDNY) plaintiff and for each member of the Group.

2. **IT IS SO ORDERED THAT** the Appellee shall not later than **Monday, October 16, 2023, by 10:00 AM, time of the essence**, file into this Court and the respective District Courts and serve a copy of the same on Appellant a certified, under oath, chain of custody, (the "**Chain of Custody**") for each judicial record associated with the Criminal Proceedings.

3. *IT IS SO ORDERED THAT* the Appellee shall not later than **Monday, October 16 2023, by 10:00 AM, time of the essence**, file into this Court and the respective District Courts and serve a copy of the same on Appellant certified copies of District Judge Colleen McMahon's Administrative Office of the U.S. Court's personal financial records disclosing each convertible promissory note (CPN) investment made, underwritten, funded, and collected by Judge McMahon and/or her spouse, Frank V. Sica; and (B) *file into this Court and the respective District Courts copies of all SEC, FINRA, and NYS Dept of Finance broker-dealer registration records for Judge McMahon and Frank V. Sica.*

4. *IT IS SO ORDERED THAT the Appellee, the United States, the plaintiff, sub judice, shall not later than **Friday, October 20, 2023, by 10:00 AM, time of the essence, (i)** show cause*

in the District Court (SDNY), before a new assigned District Judge,[4] in writing and in person why the **U.S. v. Ware**, 04cr1224 (SDNY) and **U.S. v. Ware**, 05cr1115 (SDNY) indictments, orders, judgments, and proceedings shall not be reversed, annulled, vitiated, set aside, vacated, and dismissed with prejudice, nunc pro tunc, and judgment entered on behalf of Ulysses T. Ware as the prevailing party, (ii) why the Appellee shall not be sanctioned in compensatory damages in the sum certain amount of $2.225 billion, jointly and severally, *in their personal and individual capacities*, (iii) why the Appellees shall be not be adjudged and adjudicated in civil contempt of the Brady Court Orders, and other final orders and judgments; and (iv) why each Appellee shall not be adjudged, in criminal contempt of the Brady Court Orders and other final orders and judgments, and indicted and prosecuted pursuant to Fed. R. Crim. P. 42 and 18 USC 401(2), 401(3) for criminal contempt of the Brady Court Orders and other final orders and judgments.

5. **IT IS SO ORDERED THAT the Appellee, the United States, the plaintiff, sub judice, shall** not later than **Friday, October 20, 2023, by 10:00 AM, time of the essence,** that the United States shall file into the respective sub judice district courts (SDNY) sworn declarations from each of its of its trial witnesses, prospective trial witnesses, or grand jury witnesses, (the "**Witness**"), that attest and certify that (i) no perjury, false,

---

[4] District Judges Edgardo Ramos, Katherine Polk-Failla, Laura Taylor-Swain, and Colleen McMahon are judicially disqualified pursuant to 28 USC 455(a), and 455(b)(1-5), because all have an actual, unwaivable conflict of significant personal pecuniary and penal interest in the outcome of the proceedings, and Appellant has indicated that each will be subpoenaed and compelled to provide records and testimony as an adverse, hostile, material fact witness.

misleading, or otherwise deceptive evidence (see false, fabricated, misleading, and bogus

trial exhibits GX 92, GX 93, 05cr1115 (SDNY), introduced as a fraud on the court and the

jury through FBI analyst Maria A. Font, via AUSA Alexander H. Southwell), statements,

testimony, inferences, or other untrue factual predicates were introduced into the

respective proceedings by the government's witness; (ii) attest and certify that the United

States did not provide, suggest, or in any way suggest facts, testimony, inferences, or

other factual predicates to the respective Witness that were in any way whatsoever, false,

misleading, untrue, or otherwise, not credible; (iii) certify and attest that the United

States did not threaten, intimidate, coerce, pressure, strong-arm, or force, or in any way

whatsoever suggest any pecuniary or penal harm, danger, or risk to the Witness if the

Witness did not testify for the United States, or did not testify in the way and manner the

United States suggested the Witness to testify, or if the Witness provided any exculpatory

or impeachment testimony or assistance to Appellant in the Criminal Proceedings, or

communicated with Appellant regarding the Criminal Proceedings, or that the Witness

had been contacted and interviewed by the United States.

6. **IT IS SO ORDERED THAT the Appellee, the United States, the plaintiff, sub judice, shall**

not later than **Friday, October 20, 2023, by 10:00 AM, time of the essence,** shall file into

this Court an affidavit signed by Merrick B. Garland, Damian Williams, Lisa Monaco, Vanita

Gupta, Daniel Gitner, and Margaret M. Garnett, (the "**DOJ Executives**"), that presents a

factual basis why this Court shall not, (A) enter a judicial order directed to the New York,

Page **9** of **17**
Monday, October 16, 2023
(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire
Conspiracy Rule 27-1 emergency motion.

Georgia, and Texas Departments of Finance, or Secretaries of States judicially recommending the certificates required to do business in the States of New York, Georgia, Texas, and any other state, (the "**States**"), doing business before the U.S. Securities and Exchange Commission, ("**SEC**"), and/or appear in any United States federal or state court or before any federal or state agency, or (B) that any federal judge or court employee, or lawyer named herein shall be immediately suspended and referred to the NYS Department of Finance, the FBI, the DOJ's Division of Public Integrity, their respective bar association, and/or the Judicial Conference of the United States, and (i) suspension or termination of all doing business privileges in the States ***shall not be immediately suspended and ultimately revoked***, nunc pro tunc, January 2001 for the following businesses and individuals for the knowing, material assistance, aiding, abetting, assisting, enabling, and participation in a Hobbs Act, RICO loan sharking/money laundering/extortion/racketeering criminal enterprise, LH Financial Services and Alpha Capital, AG (Anstalt), to wit:

| Alpha Capital, AG (Anstalt) | LH Financial Services, Ari Rabinowitz, Joseph Hammer, Konrad Ackerman. | Loeb & Loeb, LLP, Mitchell Nussbaum, Alexandria Kane.[5] |
| --- | --- | --- |

---

[5] NYC law firm Loeb & Loeb, LLP, et al. drafted, signed, and filed the fraudulent Form S-1 for a $60M SPAC IPO which raised $60M for Alpha Capital, AG (Anstalt) sponsored loan sharking and money laundering shell company to enable LH Financial Services and other affiliated loan sharking entities to wash and clean their unlawful profits, proceeds, revenues derived from Hobbs Act crimes of violence, kidnapping, armed robbery, murder-for-hire, extortion, attempted murder, conspiracy, loan sharking, racketeering, and or RICO predicate offenses.

| Tailwind Capital Management, LLP[6] | Grushko & Mittman, P.C.[7] | Baker & McKenzie, LLP, London Fisher, LLP, Thomas A. Leghorn, Bernard London, Robert Alberal, Lawrence Mandala.[8] |
|---|---|---|

---

[6] Tailwind funding Colleen McMahon and Frank V. Sica's +$22 million investment in RICO, criminal usury, convertible promissory notes made while McMahon and Sica were not lawfully registered as broker-dealers with FINRA as required by federal, 15 USC 78o(a)(1), and New York state law.

[7] **Convicted felon** Edward M. Grushko and his partner Barbara R. Mittman, Esq. arranged, coordinated, and facilitated as purported "escrow agents" the criminal enablement and other criminal functions for **NYC Mob Boss** Ari Rabinowitz, **fugitive** Thomas Badian, **master forger** Konrad Ackermann, **murdered-for-hire victim** Soloman Obstfeld, LH Financial Services and Alpha Capital, AG to forge, counterfeit, and launder GPMT's stock certificates through brokerage firms, drafted bogus and fraudulent Rule 144 legal opinions and issued the same to GPMT's transfer agent, laundered counterfeit stock certificate through its and other law firms' escrow accounts disguised as attorney fees, expenses, costs, and other fake and bogus expenditures, which was used to bribe and pay kickbacks to federal judges, and federal prosecutors.

[8] Baker & McKenzie, LLP and its lawyers (Lawrence B. Mandala, Esq. and Robert Alberal, Esq.), and outside liability counsel, London Fisher, LLP, Thomas A. Leghorn, Esq., and Bernard London, Esq. have knowingly colluded, conspired, obstructed justice, and criminally coordinated with LH Financial Services, Ari Rabinowitz, Edward M. Grushko, Konrad Ackermann, and others and on behalf of Alpha Capital, AG against the interests of GPMT, its client, and Baker & McKenzie, LLP negligently advised GPMT to file a Form SB-2 with the SEC and register "200% of the [$1.1M] loan amount [see GX 1-4, and GX 5, para. 10.1(iv)]" necessary to repay criminal usury, unlawful debts, GX 1-4, ipso facto, criminal usury, convertible promissory notes that contained a floating price conversion option (FPCO).

| Kilpatrick, Townsend, & Stockton, LLP[9] | Trailblazer Merger Corp., I[10] | Paul, Weiss, et al., LLP[11] |
|---|---|---|

---

[9] KTS and its partners, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, and Bankruptcy Judge Coleman Ray Mullins acted as the Murder-for Hire conspiracy's legal counsel during the ***In re Group Management Corp.***, 03-93031 (BC NDGA) Chapter 11, see Dkt. 11, 14, 15, 16, 28, 256, 274, and 275—KTS' conspiracy to commit bankruptcy fraud, and enable the Murder-for-Hire conspiracy to obstruct GPMT's 11 USC 365(c)(2) mandatory notice (motion), Dkt. 9, to reject GX 1-4, GX 5, RICO criminal usury, unlawful debt, 18 USC 1961(6)(B), unenforceable, and moot, **executory contracts**—as a matter of law, executory contracts, GX 1-4, GX 5, are prohibited by Congressional mandate, 11 USC 365(c)(2), from being assumed by GPMT, the debtor in possession in the 03-93031 Chapter 11. Accordingly, as of the March 2003 filing of Dkt. 9 in 03-93031—***legal notice of rejection*** of GX 1-4, and GX 5, GPMT had no further legal liability or responsibility with respect to GX 1-4, and GX 5, and United States Attorney (SDNY) David N. Kelley was prohibited by law from using GX 1-4, and GX 5 as the basis for a bogus and fraudulent 18 USC 401(3) criminal contempt charge in ***U.S. v. Ware***, 04cr1224 (SDNY).

[10] The Murder-for-Hire CCE's current money laundering vehicle registered with the SEC on Form S-1, a SPAC IPO, ($60M raised, with unregistered broker-dealer current LH Financial Services ***Mob Boss*** Ari Rabinowitz—the alleged coordinator of former LH Financial Service's CEO Soloman Obstfeld's murder is listed as the CEO) by NYC law firm Loeb & Loeb, LLP,'s Mitchell Nussbaum, Esq. and underwritten by the CCE's NYC investment banking partner Ladenburg, Thalmann, LLP.

[11] The facilitator and coordinator for the Murder-for-Hire CCE's principal Charles Ellis Schumer—Schumer's brother Robert B. Schumer, Esq. is a partner at NYC law firm Paul, Weiss, where Damian Williams was an associate before Schumer arranged for his hiring at the USAO (SDNY): Williams was "put in place" by Schumer for the corrupt purpose to control Williams and coordinate and execute corrupt prosecutorial decisions; and Paul, Weiss functions as the legal conduit used by Charles Schumer to "put in place" ***Merrick B. Garland, Margaret M. Garnett, Colleen McMahon, Katherine Polk-Failla, Damian Williams, Edgardo Ramos, Laura Taylor-Swain,*** and other federal judges and prosecutors who have pledged loyalty to Schumer, the Murder-for-Hire CCE and the CCE's participants in exchange for bribes, payoffs, kickbacks, illegal gratuities, gifts, favors, and other things of value, for fraudulent and corrupt judicial and prosecutorial appointments made by Schumer.

| Simpson, Thacher, Bartlett, et al., LLP[12] | Royal Bank of Canada (RBC)[13] | Gibson, Dunn, et al., LLP[14] |
|---|---|---|
| Garland, Samuel, & Loeb, P.C. | Arora & LaScala, LLC | Gary G. Becker, P.C. and Gary G. Becker[15] |
| Bachner & Associates and | Marlon G. Kirton, P.C. | Alexander H. Southwell |

---

[12] STB hired Nicholas S. Goldin, a line prosecutor in U.S. v. Ware, 04cr1224 (SDNY), STB also previously employed District Judge (SDNY) Edgardo Ramos, deceased former District Judge (SDNY) Robert W. Sweet, and Kenneth A. Zitter, Esq., all major players and participants in the RICO crimes committed by the CCE.

[13] Canadian money laundering vehicle utilized by former AUSA (SDNY) Maria E. Douvas, a line prosecutor in the RICO 18 USC 1961(6)(B) unlawful debt, retaliatory prosecution **U.S. v. Ware**, 04cr1224 (SDNY), who was "put in place" as the general counsel in RBC by the Murder-for-Hire CCE to launder the profits, proceeds, and revenue from the activities of the CCE.

[14] NYC law firm Gibson, Dunn, et al. arranged for the initial and continued employment of former AUSA Alexander H. Southwell *as an illegal bribe, a kickback, a payoff*, for his services to the Murder-for-Hire CCE, (1) during the Sept. 1, 2004 Atlanta, GA kidnapping and attempted murder of Ulysses T. Ware, Esq.; (2) for arranging and coordinating the Sept. 2005 false and illegal arrest of Mr. Ware based on a perjured and counterfeit affidavit drafted by former FBI special agent David Makol, and knowingly presented to magistrate judge (SDNY) Andrew J. Peck (Judge Pauley's law school classmate at Duke School of Law); and (3) during the 04cr1224 and 05cr1115 bogus indictments, and prosecutions of Mr. Ware. Alexander H. Southwell's, Michael J. Garcia, Nicholas S. Goldin, Maria E. Douvas, David N. Kelley, Steve R. Peikin, Joan E. McKown, Jeffrey B. Norris, Kent J. Dawson, the SEC, Thomas W. Thrash, Jr., KTS, et al. arranged and hired *Leonard A. Churn*, a covert government agent in Atlanta, GA, to have the Gwinnett county, GA police department falsely arrest Mr. Ware for an alleged bogus and fraudulent tag violation as the means to increase Mr. Ware's criminal history point total, as the illegal means and method to increase the bogus and fraudulent sentence imposed by Judge Pauley in 05cr1115 and by Judge Sweet in 04cr1224.

[15] Becker was hired and paid bribes—fraudulent CJA fees, by District Judge William H. Pauley, III. Becker served as the eyes and ears of the CCE, and served as a covert government agent during the U.S. v. Ware, 05cr1115 (SDNY) trial. Becker was hired by the CCE after Mr. Ware fired his retained covert *government agent* lawyer Michael F. Bachner and the Atlanta, GA Garland law firm *who both adamantly and absolutely refused to file any basic Brady or other discover motions, and refused to adversarily confront the government's bogus charges*, to obtain, steal, and share Ulysses T. Ware's confidential trial strategies and information with the USAO and with Pauley.

| Michael F. Bachner (see Becker's note).[16] | | |
|---|---|---|
| Maria E. Douvas | Nicholas S. Goldin | Steven D. Feldman |
| Dechert, LLP | David N. Kelley | Sarah E. Paul |
| Barbara S. Jones[17] | Frank V. Sica | Edward T.M. Garland, |
| Donald F. Samuel | Manibur S. Arora | Wendy L. Hagenau[18] |

---

[16] Michael F. Bachner, Esq. was hired by Mr. Ware as Sixth Amendment counsel for 04cr1224 and 05cr1115. Bachner was also hired (bribed) by the Atlanta, GA law firm, Garland, Samuel, & Loeb, P.C. and bribed by the USAO and District Judge William H. Pauley, III as a covert government agent with the objective to impede, obstruct, and undermine the defense of Mr. Ware and to deliver Ulysses T. Ware's trial strategies and other information to AUSA Alexander H. Southwell, the USAO (SDNY), and District Judge William H. Pauley, III as the illegal means and methods to make sure the CCE's participants and ill-gotten gains were no exposed.

[17] Former District Judge (SDNY) Barbara S. Jones (currently a partner at NYC law firm Bracewell, LLP) is now retired, sat on the moot appeal of *U.S. v. Ware*, 09-0851 (2d Cir.) panel along with deceased corrupt circuit judges Peter W. Hall and Robert A. Katzmann, and Jones while lacking all jurisdiction over the appeal knowingly colluded and conspired with Hall, Katzmann, Sweet, the USAO, and the CCE, Jones did obstruct justice, and Jones conspired, rigged, and fixed the ***moot*** 09-0851 appeal—that is, Kenneth A. Zitter, Esq. had on Dec. 20, 2007, Dkt. 90, ***voluntarily dismissed with prejudice*** the 02cv2219 (SDNY) lawsuit pursuant to Fed. R. Civ. P. 41(a)(2), which ipso facto mooted 09-0851, in favor of the CCE's participants and her desire to conceal and cover up the loan sharking and money laundering RICO predicate offenses committed by the Murder-for Hire CCE.

[18] Chief Bankruptcy Judge (NDGA) Wendy L. Hagenau has knowingly, willfully, and ***without jurisdiction*** over the 03-93031 GX 1-4, and GX 5, RICO criminal usury, executory contracts, rejected by GPMT in March 2003 pursuant to 11 USC 365(c)(2), see Dkt. 9, knowingly and with a depraved and indifferent defective mental faculty, conspired, and rigged, fixed, and obstructed Appellant and GPMT, 11 USC 1109(b) statutory parties in interest in the Chapter 11, from raising, appearing in, and adjudication of their legal proceedings to vacate the moot Dkt. 28, order (dismissed GPMT's Chapter 11 with prejudice). Instead of functioning as an impartial Article I federal judge, Hagenau, joined the CCE, and colluded and conspired with Colleen McMahon, Edgardo Ramos, Frank V. Sica, Laura Taylor-Swain, and other principals in the CCE, and without jurisdiction entered Dkt. 256, 274, and 275, to violate GPMT and Appellant's constitutional right to access to the court.

| Thomas W. Thrash, Jr.[19] | Kent J. Dawson | Preet Bharara |
|---|---|---|
| Joan E. McKown | Steve R. Peikin[20] | Konrad Ackermann |
| Kenneth A. Zitter | Barbara R. Mittman | Edward M. Grushko |
| Colleen McMahon[21] | M. Regina Thomas | John W. Mills, III |
| J. Henry Walker, IV | Katherine Polk-Failla | Robert D. Sack, Amalya L. Kearse, Debra Ann Livingston.[22] |
| Edgardo Ramos[23] | Laura Taylor-Swain | Ruby Krajick |

---

[19] Thrash was bribed, paid off, and hired by the Murder-for-Hire CCE's principals and conspired and colluded with the U.S. Marshals, Mob Boss Ari Rabinowitz, LH Financia, Services, Alpha Capital, AG, Leonard B. Sand, Zitter, the USAO, the SEC, and the Murder-for-Hire CCE and Thrash knowingly coordinated with the U.S. Marshals and executed the Sept. 1, 2004, Atlanta, GA attempted murder, attempted armed robbery, extortion, kidnapping and false arrest of Ulysses T. Ware, Esq., as Hobbs Act crimes of violence and the illegal means and methods to collect GX 1-4, GX 5, the RICO 18 USC 1961(6)(B) criminal usury, unlawful debt collection activity.

[20] Former AUSA Steve R. Peikin colluded and conspired with the SEC's Joan E. McKown and coordinated and arranged for the SEC to covertly, in violation of the Fifth Amendment and federal grand jury rules, and assist the USAO (SDNY) and facilitated and conducted the 2003 Las Vegas 03-0831 (D. NV) Bootleg Grand Jury proceeding used to illegally gather evidence for use in the RICO unlawful debt collection prosecutions (04cr1224 and 05cr1115)(SDNY).

[21] Arranged, coordinated, rigged, and fixed the 02cv2219 (SDNY) litigation, see Dkt. 120, 137, 141, and 151, in such a manner that her 28 USC 455(a), 455(b)(1-5) actual conflict of interest—her and her spouse, Frank V. Sica, *personal ownership* in +$22 million in RICO unlawful debts, NYS Penal Law, section 190.40, convertible promissory notes, the same subject matter as the 02cv2219 (SDNY) litigation, was concealed, suppressed, and covered up by her criminal obstruction of justice.

[22] Fraudulently and corruptly have acted for and on behalf of the Murder-for-Hire CCE's principals and operations, and "put in place" a bogus and fraudulent leave to file moot order that corruptly prevented Appellant from exercising his right to access to the courts to obtain actual innocent Brady exculpatory and impeachment evidence in the possession of the DOJ and its surrogates, proxies, and alter-egos.

[23] Ramos, Laura Taylor-Swain, LeShan DeArcy Hall, Debra Ann Livingston, Amalya L. Kearse, and Robert D. Sack were hired (bribed, paid off) by the *Murder-for-Hire CCE's principals* and did obstruct, impede, delay, and deny *Ware v. USA, et al*., 22cv3409 (SDNY) 2241 actual innocent habeas corpus petition while Ramos

Page **15** of **17**
Monday, October 16, 2023
(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire Conspiracy Rule 27-1 emergency motion.

| Andrew L. Fish | AUSA Daniel Gitner | AUSA Margaret M. Garnett[24] |
| Charles Ellis Schumer[25] | Robert B. Schumer | Lashan DeArcy Hall |
| David Mulcahy[26] | Thomas J. McCarthy | Michael Fitzpatrick |
| Leonard A. Churn[27] | Andrea Johnson | Jeremy Jones |

---

knew—or was ignorant of the law, which is likely given Ramos' incompetence, that he lacked all jurisdiction to conduct 28 USC 2255 proceedings—that is, all alleged federal sentences imposed in 04cr1224 and 05cr1115 has expired by operation of law on Dec. 12, 2022, when Ramos entered Dkt. 126, moot order (fraudulently and criminally converted a 2241 actual innocent habeas corpus petition to a **_moot_** 2255 motion).

[24] According to individuals with personal knowledge of the facts Charles E. Schumer, the common denominator, acted with a corrupt intention and nominated Garnett for a position as a federal judge (SDNY)—to be "put in place" and "used by Schumer and the CCE's principals to provide protection" for the Murder-for-Hire CCE's operations and principals.

[25] **_Charles Ellis Schumer_**, the common denominator, is the master-mind, the "Boss of Bosses" (quoting persons having personal knowledge of the CCE's internal organizational structure) for the Murder-for-Hire CCE's operations, judicial and prosecutorial bribery racketeering conspiracy, payment of kickbacks, pay-offs, gifts, favors, illegal gratuities, and other things of value—Schumer has used and continues to use the NYC law firm of Paul, Weiss, et al., and its principals as agents and operatives for the CCE's illegal and criminal business—that is, Schumer uses Paul, Weiss' associates and partners and "puts in place" as prosecutors [Damian Williams, Breon Peace, Merrick B. Garland, Margaret M. Garnett, Daniel Gitner, Audrey Strauss, Preet Bharara] or federal or state judges [Edgardo Ramos, Colleen McMahon, Laura Taylor-Swain, LaShan DeArcy Hall, Katherine Polk-Failla, Michael J. Garcia, and others] to rig and fix prosecutions and other proceedings, to covertly act on behalf of the CCE's operations, to protect its principals and the profits and proceeds derived from the loan sharking and money laundering RICO predicate offenses from legal jeopardy, and to obstruct justice whenever he (Schumer) demands.

[26] Acted and functioned as a covert agent for District Judge William H. Pauley, III to deny Ulysses T. Ware access to the federal court buildings in SDNY.

[27] Churn, Hallman, Johnson, and Beckett were paid, bribed, intimidated, and coerced by the government and covertly acted and were used as puppets, stooges, clowns, and functioned as agents of the Murder-for-Hire CCE and provided the CCE with confidential information as government agents which was used against Ulysses T. Ware in violation of the Fifth Amendment.

Page **16** of 17
Monday, October 16, 2023
(39S-1) re Supplemental Emergency Reliefs to Part 21S-1 re Hobbs Act Kidnapping and Murder for Hire Conspiracy Rule 27-1 emergency motion.

| | | |
|---|---|---|
| Richard Dessources | Jeffrey B. Norris | Spencer C. Barasch |
| David B. Levitt | **Bridgett Hallman** | Myron Williams |
| Maria A. Font | David Makol | Andrew J. Peck |
| Michael H. Dolinger | Melissa Childs | Jun Xiang |
| Won Shin | Andre Damian Williams, Jr.[28] | Vanessa G. Beckett |
| Barrington D. Parker, Jr. | Reena Raggi | |

**SO ORDERED** this _____ day of October 2023 in New York, NY.


_____

Circuit Judge



**End of Order**

---

[28] Williams, Gitner, Garnett, Xiang, Shin, Childs, and other DOJ prosecutors, along with their current and Williams' prior boss, USAG Merrick B. Garland, according to the DOJ's EOUSA's March 20, 2023, *In re Ware*, 000907 FOIA response, *are and have been in willful civil and criminal contempt*, 18 USC 2, 241, 242, 371, 401(2), 401(3), 1512, 1519, and 2071, of the Brady Court Orders entered in the sub judice Criminal Proceedings (04cr1224 and 05cr1115) (SDNY).

# 23-865/23-869

Business Intelligence Group Doc. #0014323 DAL/JAC re Public corruption/judicial misconduct investigation review

**Complaint of Judicial Misconduct against District Judge Edgardo Ramos (SDNY) filed with the U.S. Court of Appeals for the Second Circuit on May 26, 2022.**

## In re Edgardo Ramos, 02-22-90049-jm (2d Cir.)
_____

Appx 57-8

**May 26, 2022, Declaration of Undisputed Material Judicial Misconduct Facts regarding District Judge Edgardo Ramos (SDNY) by Ulysses T. Ware:**

**The Facts and exhibits are excerpted from *Ware v. USA, et al.,* 22cv3409 (SDNY), Dkt. 1-2, pages 139 (actual innocent 28 USC 2241(a) petition for the writ of habeas corpus)**

Federal law, 28 USC 455(a), 455 (b)(1-5), and the Code of Conduct for Federal Judges, prohibited Ramos from judicial participation in 22cv3409 (SDNY), 04cr1224 (SDNY), and 05cr1115 (SDNY)-- indisputable judicial misconduct.

I, Ulysses T. Ware, hereby this 26th day of May 2022, in the city of Brooklyn, in the State of New York, while under oath, set my hand and seal, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC 1746, hereby have made this sworn Declaration in my personal and individual capacity, and set forth the following facts that are true, correct, and indisputable. I hereby incorporate by reference herein and make the same a part hereof as if attached hereto, the Government's trial exhibits, 1224 and 1115 PSIs in heac verba, briefs, motions, memoranda, transcripts, orders, judgments, and dockets from the 02cv2219 (SDNY), 03-93031-mhm (BC NDGA), 03-0831-kjd (D. NV), 04cr1224 (SDNY), 05cr1115 (SDNY), 22cv3409 (SDNY) and related proceedings, jointly (the "**Ware Cases**").

**Fact #36**

(a) District Judge Edgardo Ramos (SDNY) is hereby designated as an ***actual innocent* Brady exculpatory evidence material witness** and identified as an **UNINDICTED CO-CONSPIRATOR**.

(b) Judge Ramos, an Unindicted Co-conspirator, has adamantly refused all requests by Mr. Ware to have the Brady Orders enforced. See 05cr1115 (SDNY) Dkt. 260, 263, 267, 272, 273, 274, 275, 276, 283, 287, 291, 293, 294, 295, 299, 302, 305, and ***unfiled, concealed, and suppressed filings*** by Mr. Ware, 51A, 51B, 51C, 51D, and 51E, jointly, (the "**Ware Actual Innocence Brady Exculpatory Evidence**").

The EOUSA on March 20, 2023, in In re Ware, 000907 FOIA response, confirmed, clear and convincing evidence, that Pauley, Ramos, and the U.S. Atty's Office (SDNY) had concealed and suppressed Brady evidence since 2005.

**Fact #39**

(a) The Unindicted Co-conspirators individually, jointly, severally, as an illegal association-in-fact, a continuing criminal enterprise, knowingly, willfully, with malice aforethought, have willfully resisted, disobeyed, aided, abetted, and orchestrated the resistance of and disobedience to lawful court orders and final judgment, the Ware Court Orders, in willful violation of 18 USC 401(2) and 401(3), criminal contempt;

(b) Edgardo Ramos, has since on or about July 12, 2021, in the "clear absence of all jurisdiction" acted in his personal and individual capacity, and had knowingly and willfully resisted, disobeyed, and has knowingly aided, abetted, colluded, conspired, and racketeered with Audrey Strauss, Melissa Childs, John M. McEnany, and the Unindicted Co-conspirators to continue to resist and disobey the written Brady

Orders, Exhibit 2 and 3, resisted Exhibits 3, 4, and 5, and Ramos has knowingly rigged and fixed the 04cr1224 and 05cr1115 proceedings, claiming to rely on null and void ab initio "leave to file" orders, Dkt 160 (04cr1224) and Dkt. 220 (05cr1115), entered in violation of Circuit precedent, and entered in violation of all due process of law, without any notice or opportunity to be heard, see Exhibits 22-26;

**Stolen, suppressed, and concealed actual innocent Brady exculpatory and impeachment evidence.**

(c)    Audrey Strauss, Melissa Childs, John M. McEnany, current AUSAs employed by the DOJ's USAO (SDNY) currently have in their possession material Brady exculpatory evidence, see Appx. 3, the official DOJ emails of Alexander H. Southwell, Nicholas S. Goldin, Maria E. Douvas, Steven D. Feldman, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Joon Kim, Preet Bharara, Andrew L. Fish, FBO analyst Maria Font, former FBI special agent David Makol, all ex parte communications between the USAO and Robert W. Sweet, William H. Pauley, III, Leonard B. Sand, Kenneth A. Zitter, Ari Rabinowitz, and the SEC that contain material Brady exculpatory evidence required to be immediately disclosed to Ulysses T. Ware pursuant to the express commands of the Brady court orders;

**See the DOJ's EOUSA's March 20, 2023, FOIA response.**

**Fact 41.**

Beginning from around July 12, 2021, in the Southern District of New York, and elsewhere Edgardo Ramos, ("**Ramos**"), **in his personal and individual capacity**, "in the clear absence of all jurisdiction"[1]

---

[1] Article III and 18 USC 3231 subject matter jurisdictions have not been "**affirmatively established**" (i.e., **"jurisdiction must be shown affirmatively**, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (emphasis added)) by the United States [the USAO] in regard to Dkt. 250:05cr1115 (SDNY), and thus, the **legal presumption** is that jurisdiction is absent. See *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 ("Federal courts are courts of limited jurisdiction. They possess **only that power** authorized by Constitution and statute, see *Willy v. Coastal Corp.*, 503 U. S. 131, 136-137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U. S. 534, 541 (1986), *which is not to be expanded by judicial decree*, *American Fire & Casualty Co. v. Finn*, 341 U. S. 6 (1951). **It is to be presumed that a cause [Dkt 250:05cr1115] lies outside this limited jurisdiction**, *Turner v. Bank of North-America*, 4 Dall. 8, 11 (1799), **and the burden of establishing the contrary rests upon the party [the USAO] asserting jurisdiction**, *McNutt v. General Motors Acceptance Corp.*, 298 U. S. 178, 182-183 (1936)). (1994) (emphasis added).

A federal judge, Ramos, is civilly monetarily liable to Ulysses T. Ware for money damages (+$2.225 billion dollars) when he or she "acts in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357-58 (1978). Clearly Ramos has a disqualifying financial interest in the outcome of the contempt proceedings, and is therefore constitutionally and statutorily disqualified, 28 USC 455(a), 455 (b)(1-5), from any and all judicial function regarding any aspect of the contempt motions.

Ramos is strictly prohibited by the Constitution from being a judge in his own case or in a case where he has a financial interest. See *Tumey v. Ohio*, 270 U.S. 510, 523 (1927) ("But it certainly violates the Fourteenth Amendment, *and deprives a defendant in a criminal case of due process of law*, to subject his liberty or property to the judgment of a court the judge [Ramos, J.] **of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case**.") (emphasis added); and *In re Murchison*, 349 U.S. 133, 136 (1952) ("A fair trial in a fair tribunal is a basic requirement of due

knowingly, willfully, acted in concert, aided, abetted, assisted, in bad faith, as an overt act in the furtherance of the conspiracy to resist, avoid, hinder, frustrate, obstruct, evade, and disobey the express and inherent preclusive effects of the Court Orders willfully and knowingly in violation of 18 USC 401(2) and 401(3), criminal contempt. See Exhibits 22-26.

Ramos intentionally, deliberately, with malice aforethought, colluded and conspired with the Unindicted Co-conspirators and coordinated and arranged the 1224 and 1115 proceedings in such a way that he and Audrey Strauss, Melissa Childs, John M. McEnany, (the "**USAO**"), and other Unindicted Co-conspirators were positioned and enabled to **willfully** and **knowingly** resist, avoid, evade, hinder, frustrate, and refuse to take all "reasonable steps"[2] necessary to fully comply with the express and inherent terms and commands of the Ware Court Orders, in particular the Brady Orders, Exhibits 2 and Exhibits 3, and Ramos knowingly and willfully committed the following criminal and civil contempt of the Ware Court Orders, to wit[3]:

(a)     Ramos, a purported United States District Court Judge (SDNY), knew or was recklessly ignorant of the law, and/or turned a blind eye and a deaf ear to the truth and the law, since July 12, 2021, ***recklessly and irresponsibly—that is, in the clear absence of all jurisdiction,*** orchestrated and coordinated a criminal conspiracy, (the "**Ramos Conspiracy**") with AUSAs Melissa Childs, John M. McEnany, acting U.S. Attorney (SDNY) Audrey Strauss, the USAO, and the Unindicted Co-conspirators, and Ramos willfully and knowingly manipulated and perfidiously arranged and coordinated the 1224 and 1115 proceedings in such a way that the USAO and its privies, and those acting in concert with the USAO, were and are permitted to continue to knowingly resist, evade, avoid, impede, obstruct, and disobey the Brady Orders, Exhibits 2 and 3; suppress and conceal material Brady exculpatory evidence required to be disclosed to Ulysses T.

---

process. Fairness, of course, requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent **even the probability of unfairness**. To this end, **no man [Edgardo Ramos] can be a judge in his own case, and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered**.") (emphasis added),  respectively.

[2] District Judge Pauley ordered the government's prosecutors, **Exhibit 3** ("This Court will direct the **government to produce no later than the Thursday before the start of trial [05cr1115] that exculpatory material** ….") (emphasis added) and District Judge Sweet, **Exhibit 2** ("The Government **shall** produce *all* **Brady material prior to trial**.") (emphasis added) to disclose **all** Brady evidence **prior to trial** to then defendant Ulysses T. Ware, which the government's prosecutors acknowledged was a "continuing" obligation.

[3] "Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all **reasonable steps** within the party's power to comply." ***In re Dual–Deck Video Cassette Recorder Antitrust Litig.,*** 10 F.3d 693, 695 (9th Cir.1993). A party may also be held liable for **knowingly aiding and abetting another to violate a court order**. *See **Regal Knitwear Co. v. NLRB,*** 324 U.S. 9, 14 (1945) ("defendants may nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding").

Ware; and resist, avoid, delay, and hinder, specifically the disclosure of Exhibit 22, para. 33, infra, a judicial admission, and confession, in the **unsigned** null and void ab initio, moot SEC-DOJ's Las Vegas 03-0831 (D. NV) complaint.

(b)      Ramos knowingly and willfully has colluded and conspired with the USAO and the Unindicted Coconspirators since July 12, 2021, and Ramos maliciously and insidiously orchestrated and coordinated the 1224 and 1115 proceedings and utilized a **fraudulent scheme** predicated on two null and void ab initio, purported "leave-to-file" injunctions, Dkt. 222:1115 (Pauley, J.), Exhibit 24, and Dkt 160:1224 (Sweet, J.), Exhibit 25, both entered in egregious violation of Circuit precedent[4] and the Due Process Clause of the Constitution of the United States, (the "**Fraudulent Scheme**"), to willfully avoid, evade, resist, obstruct, hinder, frustrate, and disobey the Ware Court Orders;

(c)      Ramos maliciously, willfully, and knowingly, acted in concert with the USAO, as an overt act in furtherance of the criminal conspiracy to obstruct the due administration of justice in the District Court (SDNY), **within the purview of the "general supervisory authority" of the Hon. Chief District Judge Laura Taylor-Swain to prevent**[5], and Ramos used the Fraudulent Scheme as the illegal means and method for him, the USAO, and the Unindicted Co-conspirators to willfully and knowingly evade, resist, obstruct, delay, impede, hinder, disobey, and avoid their legal obligations imposed by the terms and commands of

---

[4] See **Viola v. United States**, 481 Fed. Appx. 30, 31 (2d Cir. 2012) ("[T]he procedure for imposing leave-to-file sanctions involves **three stages**: (1) the court [Pauley, Sweet, and Ramos **first**] notifies the litigant that future frivolous filings might result in sanctions; (2) if the litigant continues this behavior, **the court orders the litigant to show cause as to why a leave-to-file sanction order should not issue**; and (3**) if the litigant's response does not show why sanctions are not appropriate**, the court issues a sanctions order.") (internal quotation marks and citation omitted). (emphasis added).

No required "show cause" order was ever entered in 1224 and 1115 according to the certified dockets in both proceedings. Nor was Ulysses T. Ware ever given any opportunity to be heard why any such sanction was not appropriate. **Accordingly, Dkt. 222 and Dkt. 160 are null and void ab initio and have no lawful preclusive effects** to prohibit Ramos from adjudicating Mr. Ware's Rule 33 motion for a New Trial predicated on "Flagrant" Brady violation; Motion to Dismiss the 05cr1115 and 04cr1224 (SDNY) Indictments; Motion to Enforce the Brady Orders; Motion for Kordel Relief, Motion Challenging the Subject Matter Jurisdiction of the 1224 and 1115 District Court, and other pending Emergency Motions. Ramos, Pauley, and Sweet designed and entered the ultra vires purported "leave-to-file" injunctions as the illegal and fraudulent scheme to cover up, hide, suppress, and conceal their crimes in aiding and abetting the willful resistance, avoidance, and disobedience of the Brady Orders and the Court Orders done to violate the constitutional and legal rights of Ulysses T. Ware.

[5] The federal courts enforce professional responsibility [judicial, the Code of Conduct for Federal Judges, and prosecutorial] standards pursuant to their **general supervisory authority** over members of the bar. **In Re Snyder**, 472 U.S. 634, 645 n. 6 (1985). (emphasis added).

Page **4** of **5**
**Thursday, May 26, 2022**

the Ware Court Orders to take **<u>every</u>** "reasonable step" in full compliance of the Ware Court Order's terms and conditions. Else willfully violate 18 USC 401(2) and 401(3).[6]

(d)    Ramos and the USAO knew it was "reasonable" for Ulysses T. Ware, the Prevailing Party to the Brady Orders and the Ware Court Orders, to exercise his legal right of enforcement of the Ware Court Orders and petition the Court for enforcement.[7] Thus, the fraudulent concoction of the **Ramos Fraudulent Scheme** was designed and fabricated as an illegal device to evade, resist, hinder, delay, and avoid all "reasonable steps" for full compliance of the Ware Court Orders as an overt act in a racially-motivated Jim Crow retaliatory hate crime conspiracy to "punish" Mr. Ware for not issuing fraudulent and bogus Rule 144(k) legal opinions to the "Civil Plaintiffs" named in para. 8 of the 04cr1224 indictment, Exhibit 7, (i) **unregistered broker-dealer** and (ii) 15 USC 77b(a)(11) **statutory underwriters** legally ineligible for Rule 144(k). See **SEC Release 33-7190 n. 17 (1995)** (Section 2(a)(11) **<u>statutory underwriters required to register all distribution of securities</u>** with the SEC).


### End of Document

I  Ulysses T. Ware have this 26th day of May 2022 in Brooklyn, NY set my hand and seal, under oath, subject to the penalty of perjury, having personal knowledge of the facts, and pursuant to 28 USC 1746 have made the foregoing statements of fact and certify each Fact is true and correct and signed this Declaration.

/s/ Ulysses T. Ware

_____
Ulysses T. Ware
May 26, 2022

_____

[6] A party may also be held liable for **<u>knowingly aiding and abetting</u>** another to violate a court order. *See Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14 (1945) ("defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding"). **The USAO, a party to the Brady and Ware Court Orders, conducted its willful and knowing resistance to the Court Orders through Ramos' conspiratorial Fraudulent Scheme to obstruct justice and in willful criminal contempt of the Ware Court Orders**.

[7] In general, "the power to punish for contempt is inherent in all courts***." Bowens v. Atlantic Maintenance Corp***., 546 F. Supp. 2d 55, 63 (E.D.N.Y. 2008) (citations omitted). "The underlying concern is 'disobedience to the orders of the [j]udiciary,' not 'merely the disruption of court proceedings.'" Id. (citing ***Chambers v. NASCO, Inc***., 501 U.S. 32, 44 (1991)). *As such, an individual* [Edgardo Ramos and the Unindicted Co-conspirators] *who disobeys a valid order of the court may be subject to both civil and criminal penalties for his actions*. Id. (citing ***United States v. Petito***, 671 F.2d 68, 72 (2d Cir. 1982)). "Criminal contempt is used to punish the contemnor or vindicate the court's authority; civil contempt seeks to coerce the contemnor into compliance with the court's orders or **to compensate the complaining party [Ulysses T. Ware] for losses [**+$2.225 billion dollars**] incurred as a result of the contemnor's conduct**." Id. (citing *Hess v. New Jersey Transit Rail Operations, Inc*., 846 F.2d 114, 115 (2d Cir. 1988)). (emphasis added).

**23-865/23-869**

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
Thurgood Marshall United States Courthouse
40 Foley Square, New York NY 10007
212.857.8585

Appx 56-6

**DEBRA ANN LIVINGSTON**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Business Intelligence Group Doc. #0014321DAL/JAC re Public corruption/judicial misconduct investigation review
In re Edgardo Ramos, 02-22-90049-jm (2d Cir.) re Order denying Ulysses T. Ware's Judicial Misconduct Petition

November 30, 2022

Ulysses T. Ware
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226

Re: *Judicial Conduct Complaint*, 02-22-90049-jm

Dear Mr. Ware:

Attached is a copy of the Acting Chief Judge's order dismissing your complaint.

If you wish to file a petition for review, you must submit a letter addressed to the Clerk of Court that begins with "I hereby petition the judicial council for review of the Chief Judge's order . . ." See 28 U.S.C. § 352(c); Rules of Judicial-Conduct and Judicial-Disability Proceedings 18. You need not provide additional copies of materials already filed, as those materials will be part of the record transmitted to the Judicial Council.

The petition for review must be received in the Clerk's Office within 42 days of the date of this letter. A petition received after this deadline will not be accepted for filing. See Rules of Judicial-Conduct and Judicial-Disability Proceedings 18(d).

Very truly yours,
Catherine O'Hagan Wolfe, Clerk of Court

By: _____
Dina Kurot
Deputy Clerk

(BIG) re Review and analysis conducted on 07.24.22 by M. Dressler for client #AA34212-098 (USA) matter re: Debra Ann Livingston and Jose A. Cabranes(Chief Circuit Judge U.S. Court of Appeals for the Second Circuit (NYC)) re criminal judicial misconduct analysis. It is my official opinion after review and analysis of the file that C.J. Livingston knowingly, deliberately, and intentionally committed criminal judicial misconduct and conspired to obstruct justice by dismissing the Ramos judicial complaint. Signed by /s/ M. Dressler, 07.24.22 (UK). A thorough review of the file supports the conclusion the Chief Judge/Acting Chief Judge violated U.S. federal law and the applicable Rules by injecting her/his personal opinion into the matter, and she improperly resolved disputed factual issues without requiring the subject federal judge Edgardo Ramos to officially deny the alleged facts in the petition. Judge Livingston/Cabranes clearly obstructed justice and violated the petitioner's right to due process of law by her improper decision. The review found evidence that the Chief Judge was improperly influenced and instructed to deny the Petition to conceal, cover up, and suppress actual innocent Brady exculpatory evidence which Judge Ramos had concealed and suppressed, cf., March 20, 2023, DOJ's EOUSA's In re Ware, 000907 FOIA response. It is my opinion that Judges Livingston, Cabranes, and Judge Ramos should be reported to U.S. CRIMNAL law enforcement.

Furthermore, the record contains indisputable evidence that Judge Ramos either stole, hid, concealed, or suppressed all judicial court records related to an alleged "Sept. 2006 ... Rule 11 proceeding" which allegedly (however there is not proof in the court's file) regarding a person the federal prosecutors claimed was a person known to be "Jeremy Jones."



22-90049-jm
November 30, 2022
Acting Chief Judge

# JUDICIAL COUNCIL OF THE
# SECOND CIRCUIT

-------------------------------------------------------X

In re

CHARGE OF JUDICIAL MISCONDUCT          Docket No.   22-90049-jm

-------------------------------------------------------X

JOSÉ A. CABRANES, *Acting Chief Judge:*[1]

Between May and July 2022, the Complainant filed a complaint and four

supplemental filings with the Clerk's Office of the United States Court of

Appeals for the Second Circuit pursuant to the Judicial Conduct and Disability

Act of 1980, 28 U.S.C. §§ 351–364 (the "Act"), and the Rules for Judicial-Conduct

and Judicial-Disability Proceedings (the "Rules"), charging a district judge (the

"Judge") of this Circuit with misconduct.

## BACKGROUND

The Complainant was convicted of securities fraud in 2007 and sentenced

William H. Pauley, III

to 97 months' imprisonment by a district judge who has since passed away.  In

_____

[1] This complaint was forwarded to Acting Chief Judge José A. Cabranes pursuant
to Rule 25(a), (f).

I have reviewed the complaint filed in Ware v. USA, Garland, Ramos, and Taylor-Swain case no. 22cv3409 (SDNY), a Title 28 section 2241 actual innocent habeas corpus petition filed on March 21, 2022. In the sworn statement of facts Judge Edgardo Ramos was named in his individual and personal capacity as (i) an adverse party-respondent, and (ii) named as a " hostile, adverse, material fact witness" which judicially disqualified Judge Ramos from all judicial participation in the 22cv3409 proceedings. The facts show that Judge Ramos did knowingly violate the Code of Conduct for Federal judges, and federal law, Title 28 sections 455(a), and 455(b)(1-5), by his refusal to recuse himself from the 22cv3409 proceedings, which is a valid ground for the 02-22-90049 judicial misconduct complaint.

CamScanner

Robert W. Sweet, in violation of the Double Jeopardy Clause

2009, another district judge sentenced the Complainant to an additional

consecutive term of imprisonment for criminal contempt arising from his refusal

The records shows that the alleged "orders" were null and void ab initio, and required the criminal violation of the U.S. federal securities laws.

to obey court orders in civil proceedings related to his securities fraud, and in

The records shows that statement by J. Cabranes is a knowingly and deliberate false and misleading statement made to obstruct justice.

2017 that judge prohibited the Complainant from filing additional motions due

Robert W. Sweet

to his history of frivolous motion practice. In 2019, the second district judge

passed away, and the criminal matter was thereafter reassigned to the Judge.

In 2022, the Complainant, proceeding pro se, filed a petition for writ of

habeas corpus in another district. The petition was transferred to the district of

22cv1531 (EDNY) was transferred to the SDNY on April 27, 2022, and assigned docket no. 22cv3409 (SDNY)

conviction and assigned to the Judge in April 2022. Since the assignment, the

Complainant has filed many dozens of letters and motions; examples include

motions to "cease and desist all resistance to binding circuit authority," to "cease

and desist all illegal collection activities associated with the $1.1m RICO

unlawful debt," to "immediately disclose all *Brady* exculpatory & impeachment

materials," to dismiss the 2004 indictment, and a "request for urgent judicial

assistance from the court to obtain a bankruptcy rule 5006 certified copy of the

docket." The Complainant has also named the Judge as a respondent to his

habeas petition and moved several times for the Judge's recusal. The petition is

pending.

The Acting Chief Judge Cabranes deliberately and intentionally failed to state for the record that Judge Ramos was named in the 22cv3409 habeas corpus petition's statement of material facts as a "hostile, adverse, material fact witness" and would be "subpoenaed to give fact testimony" at an "evidentiary hearing." It appears that this crucial fact was deliberately omitted and concealed, and suppressed by Judge Cabranes--this fact undisputedly, see U.S. Code Title 28 section 455(a), and 455 (b)(1), and the Code of Conduct for Federal Judges, required Judge Ramos to refuse the assignment of 22cv3409 and return the matter to the District Clerk for reassignment.



José Cabranes was born in Mayagüez, Puerto Rico [as was Edgardo Ramos--which is very suspicious that both Cabranes and Ramos both were born Puerto Rico] in graduated from Flushing High School in 1957 and earned an Artium Baccalaureus degree in history from Columbia College in 1961.[1] Between college and law school at Yale {Ramos also attended college at Yale]. This is more than a coincidence, it appeared and can be inferred that Cabranes was intentionally assigned the Ramos complaint for biased racial and ethic purposes, and to make sure that Ramos would get a pass.

The misconduct complaint is difficult to understand, but, at bottom, the

Complainant alleges that the Judge is an "unindicted co-conspirator" who,

among other things, "intentionally, deliberately, with malice aforethought,

colluded and conspired with the Unindicted Co-Conspirators"—the prosecutors

who worked on the Complainant's underlying criminal proceedings—to

"willfully and knowingly resist, avoid, evade, hinder, frustrate, and refuse to

take all reasonable steps necessary to fully comply with the express and inherent

There is no question the EOUSA on March 20, 2023, in the In re Ware, 000907 FOIA response confirmed that Ramos concealed Brady exculpatory and impeachment materials related to "Jeremy Jones" and other government witnesses.

commands of the [Complainant's] Court Orders." The complaint continues in

this fashion for several pages; it also alleges, for example, that the Judge

"orchestrated and coordinated a criminal conspiracy" with several Assistant U.S.

Attorneys, "willfully and knowingly manipulated and perfidiously arranged and

coordinated" the criminal proceedings to "suppress and conceal material *Brady*

I have reviewed the FOIA complaint and EOUSA' response, and this is a true statement of fact.

exculpatory evidence," and "utilized a fraudulent scheme predicated on two null

and void ab initio purported leave-to-file injunctions." The complaint also alleges

that the Judge "has adamantly refused" the Complainant's requests to enforce

several orders, and cites 17 motions or letters on the district court's docket.

The four supplemental filings expand on this last allegation; the

Complainant references various pending motions and alleges that the Judge "has

3

refused to take any judicial action on the pending dispositive motions which is a

per se violation of [the Complainant's] right to due process of law and the Code

of Conduct for Federal Judges."

## DISCUSSION

The complaint is dismissed.

To the extent the Complainant alleges that the Judge is criminally

conspiring with the Assistant U.S. Attorneys who prosecuted the Complainant,

the complaint is dismissed as "lacking sufficient evidence to raise an inference

that misconduct has occurred." Rule 11(c)(1)(D). The Complainant cites no

See the March 20, 2023, DOJ's EOUSA's In re Ware, 000907 FOIA response--ipso facto "credible evidence" of judicial fraud and corruption, and criminal and civil contempt of the Brady court orders entered in the criminal matters.

credible evidence to support his conspiratorial allegations.

The allegations concerning delay are also dismissed; the rules and

guidance implementing the Act make clear that allegations concerning delay are

ordinarily not the proper subject of a judicial misconduct complaint, and should

be dismissed under 28 U.S.C. § 352(b)(1)(A)(ii) as "directly related to the merits

of a decision or procedural ruling." *See* Rule 4(b)((2) ("Cognizable misconduct

does not include an allegation about delay in rendering a decision or ruling,

unless the allegation concerns an improper motive in delaying a particular

decision or habitual delay in a significant number of unrelated cases."); Rule 4

4

cmt. ("[A] complaint of delay in a single case is excluded as merits-related. Such an allegation may be said to challenge the correctness of an official action of the judge, i.e., assigning a low priority to deciding the particular case."). The Complainant does not allege habitual delay, nor does he allege that the Judge has an improper motive, apart from his incredible claim that the Judge is part of a criminal conspiracy.

The Clerk is directed to transmit copies of this order to the Complainant and to the Judge.

(BIG) Supervisory Review Conclusions (09.01.23)
R. Straussberg (UK)

Upon a thorough and comprehensive review, (the "Review"), of the entire case file by BIG it is the final conclusion that Jose A. Cabranes, Debra Ann Livingston, and Edgardo Ramos have all CRIMINALLY colluded, conspired, obstructed justice, and violated the due process right of Ulysses T. Ware concerning the deficient and incomplete alleged review of the 02-22-90049 judicial complaint.

The review showed and confirmed that Cabranes knowingly and deliberately omitted material facts that Ramos was named in the 22cv3409 habeas corpus petition as an adverse, hostile, material fact witness, which was a dispositive factual predicate which judicially disqualified Ramos from all judicial involvement in the 22cv3409 proceedings, and which confirmed that Ramos clearly violated the Code of Conduct for Federal Judges and federal law, Sections 455(a), and 455(b)(1-5).

The review further confirmed that Cabranes falsified and fabricated a fraudulent factual basis to dismiss the complaint without having Ramos appear and deny the alleged facts under oath--in fact it appears Cabranes knew that Ramos could not credibly dispute or deny the allegations of the suppression and concealment of actual innocent Brady exculpatory and impeachment evidence associated with a person the government claims is actually "Jeremy Jones."

The review of the docket associated with the U.S. v. Ware, 05cr1115 (SDNY) proceedings confirmed there is no official record of the alleged "September 2006" Rule 11 proceedings and its related judicial records of an alleged Rule 11 plea, allocution, and USSG 5k1.1 cooperation contract. Contact was make with the U.S. District Court (SDNY) records department personnel and its was confirmed " ... we cannot presently confirm the existence of a Rule 11 plea was entered in September 2006 in the proceedings ...."

CONCLUSION. It is the profession conclusion of BIG that crimes were knowingly committed by Jose A. Cabranes, Debra Ann Livingston, Edgardo Ramos, and others regarding the review and adjudication of the 02-22-90049 judicial complaint; we further recommend that Ulysses T. Ware file a racketeering civil complaint and name as defendants Cabranes, Ramos, Livingston, and others as defendants.

/s/ R. Straussberg



# 23-865/23-869
**Exhibit A**

Business Intelligence Group Doc. #0014321DAL/JAC re Public corruption/judicial misconduct investigation review.

In re Edgardo Ramos, 02-22-90049-jm (2d Cir.) re Ulysses T. Ware's Petition for review

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT
Thurgood Marshall United States Courthouse
40 Foley Square, New York NY 10007
212.857.8585

**DEBRA ANN LIVINGSTON**
**CHIEF JUDGE**

**CATHERINE O'HAGAN WOLFE**
**CLERK OF COURT**

January 12, 2023

**Appx 57-7**

Ulysses T. Ware
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226

Re: *Judicial Conduct Complaint*, 02-22-90049-jm

Dear Mr. Ware:

If you are attempting to file a petition for review, your petition does not conform to the Rules of Judicial-Conduct and Judicial-Disability Proceedings and is being returned to you because you did not sign the petition.

If you wish to file a petition for review, you must submit a letter addressed to the Clerk of Court that begins with "I hereby petition the judicial council for review of the Chief Judge's order . . ." and it should "state the reasons why the petition should be granted." Also, the petition "must be signed." See 28 U.S.C. § 352(c); Rules of Judicial-Conduct and Judicial-Disability Proceedings 18.

I have enclosed a copy of the Rules for Judicial-Conduct and Judicial-Disability Proceedings for your use in filing a petition for review. Please resubmit your petition with your signature.

Very truly yours,
Catherine O'Hagan Wolfe, Clerk of Court

By: _D_K_A_____
Dina Kurot
Deputy Clerk

Enclosures: As Stated

CS Scanned with CamScanner

Page **1** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

(BIG) re Review and analysis conducted on 07.24.22 by M. Dressler for client #A043-2172-998 (USA) matter re: Debra Ann Livingston/Jose A. Cabranes (Chief Circuit Judge U.S. Court of Appeals for the Second Circuit (NYC)) re criminal judicial misconduct analysis. It is my official opinion after review and analysis of the file that C.J. Livingston and Jose A. Cabranes knowingly, deliberately, and intentionally committed criminal judicial misconduct and conspired to obstruct justice by dismissing the Ramos 02-22090049-jm (2d Cir.) judicial complaint. Signed by /s/ M. Dressler, 07.24.22 (UK).

# The Office of Ulysses T. Ware

123 Linden Blvd.
Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Monday, January 9, 2023
Resubmitted on January 30, 2023, per the Clerk's letter dated January 12, 2023.

Office of the Circuit Clerk
U.S. Court of Appeals
For the Second Circuit
Thurgood Marshall Courthouse
40 Foley Sq.
New York, NY 10007

Re:     Complaint of criminal judicial misconduct regarding District Judge Edgardo Ramos (SDNY).

*In re Edgardo Ramos*: No. 02-22-90049-jm (2d Cir.)

Review of November 30, 2022, Order of the Chief Judge pursuant to 28 USC 352(c).

Dear Ms. Wolfe:[1]

> **"I hereby petition the judicial council for review of the Chief Judge's order dated November 30, 2023."**

Please docket and file this "review of the Chief Judge's order" dated November 30, 2022, regarding ***criminal judicial misconduct*** matters concerning District Judge Edgardo Ramos (SDNY) for his ongoing and past commission of ***civil and criminal contempt*** of multiple court orders and judgments, 18 USC 401(2), 401(3), high crimes and misdemeanors, impeachable offenses, and his ***ongoing conspiracy*** to obstruct justice while aiding and abetting the Government to suppress and conceal actual innocent Brady exculpatory and impeachment evidence in ***U.S. v. Ware***, 04cr1224 (SDNY) and ***U.S. v. Ware***, 05cr1115 (SDNY).

---

[1] This petition for review is being resubmitted on January 30, 2023, per the Clerk's letter dated January 12, 2023, attached hereto as Ex. A.

Page **2** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

Please notify the undersigned once this matter is docketed and confirm your file number regarding this complaint.

Sincerely,

/s/ Ulysses T. Ware

Page **3** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

# Table of Contents

**Reasons why the petition should be granted.** ................................................................ 5

**Preliminary Statement.** ................................................................................................. 6

**A.     Reckless, Negligent, Irresponsible, Deliberate, and Intentional Errors and Frauds committed and made by the Chief Judge Debra Ann Livingston as a fraud on the court, and an overt act in the conspiracy to suppress and conceal actual innocent Brady exculpatory and impeachment evidence in the November 30, 2022, order, in refusing to conduct *any* investigation into the facts and evidence submitted to the Court of Appeals, or have the Judge, Edgardo Ramos, *deny the charges under oath*.** . 9

**B.     Federal law, 28 USC 455(a), 455(b)(1-5), and the Constitution required the Judge (Edgardo Ramos) to have recused himself from 1224, 1115, and the pending 22cv3409 (SDNY) 2241 habeas corpus proceedings.** ................................................................................................ 11

**C.     The Chief Judge negligently and recklessly refused to investigate whether the government has fully and completely produced and disclosed "all" Brady actual innocent exculpatory and/or impeachment evidence required by the Brady Court Orders. See Rule 11(b).** ...................... 12

**D.     Conclusion.** .............................................................................................................. 12

**E.     Requested relief.** ..................................................................................................... 13

Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

Office of the Clerk of the Court:

January 8, 2023

Dear Clerk:

Pursuant to 28 USC 252(c), **I, Ulysses T. Ware petition the Judicial Council for review of the Chief Judge's order dated November 30, 2022**.

## Reasons why the petition should be granted.

The petition should be granted for the following reasons, to wit:

1. the Chief Judge denied the complaint *without conducting any investigation into the allegations*,

2. did not require the subject Judge, *Edgardo Ramos, deny the allegations under oath*,

3. the Chief Judge conducted illegal fact finding in violation Rule 11(b)[2] and,

4. the Chief Judge violated due process of law, the Rules on Professional Conduct for Federal Judges, and improperly in violation of due process law purported to "determine" and ***frivolously*** deny the facts, allegations, and claims in the Complaint without conducting any investigation into the facts that supported the claims—***a reckless, disgraceful, biased, partial, and criminal fundamental miscarriage of justice.***

5. The Chief Judge, Debra Ann Livingston, egregious and execrably violated her oath of office, violated the constitutional due process rights of Ulysses T. Ware, violated the Codes of Conduct for Federal Judges, and did nothing more than rubber-stamp and deny the fully supported by the records, the facts presented, and allegations claims and allegation of criminal judicial misconduct—18 USC 2, 241, 242, 371, 401(3), 1519, and 2071 *perpetrated and willfully committed by Edgardo Ramos while he knowingly colluded, conspired, and acted in concert with the U.S. Department of Justice to conceal*

---

[2] "In conducting the inquiry, ***the chief judge must not determine any reasonably disputed issue***. Any such determination must be left to a special committee appointed under Rule 11(f) and to the judicial council that considers the committee's report." (emphasis added)

Page **5** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

*and suppress actual innocent Brady exculpatory and/or impeachment evidence required to be disclosed and produced by the Brady Court Orders*.

**That is why the Chief Judge Debra Ann Livingston ipso facto committed clear error of fact and herself committed criminal judicial misconduct**.

## Preliminary Statement.[3]

The Complainant contends that the Chief Judge, Debra Ann Livingston, knowingly, deliberately, intentionally, with malice aforethought, with an evil and callous mind, **_to obstruct justice_**, criminally rigged and fixed the outcome of the Complaint in favor of the Judge, Edgardo Ramos; and  conspired, colluded, and acted in concert with the Judge, Edgardo Ramos, and the government, as an overt act in furtherance of the **_ongoing_** DOJ criminal enterprise to hide, conceal, suppress, and cover up *actual innocent Brady exculpatory and impeachment evidence* in the actual and/or constructive possession of the United States Department of Justice, (the "**DOJ**"). Brady evidence the government was ordered to have produced and disclosed "prior to trial" in 2007.

**A competent, unbiased, and impartial investigation into the facts and the claims would have shown that to this day the government and Edgardo Ramos have continued to suppress and conceal _Brady actual innocent exculpatory and impeachment evidence_, and have never produced or disclosed that:**

1. The plaintiffs in the 02cv2219(SDNY), ("**2219**"),  lawsuit have at all times since February 1, 2001, according to Brady exculpatory evidence obtained by the Complainant in 2021,

---

[3] See Dkt. 155, 22cv3409 (SDNY), Rule 5(f) Brady motion for the government and the Judge, Edgardo Ramos, to certify that "all" actual innocent Brady exculpatory and impeachment evidence has been produced as **_ordered_** by the Brady Court Orders entered in the sub judice 1224 and 1115 criminal proceedings. The Judge, Edgardo Ramos, has refused to enforce the Brady Court Orders for a favor, a bribe, a kickback, a gift, an illegal gratuity, a thing of value—a fraud on the court, to the government *to cover up and conceal* the numerous Brady violations, and criminal contempt, 18 USC 401(3), of the Brady Court Orders committed by the U.S. DOJ and its prosecutors, and Edgardo Ramos. To date, Edgardo Ramos has deliberately and intentionally conspired and colluded with the government in violation of the Codes of Conduct for Federal Judges, and federal criminal law, 18 USC 2, 241, 242, 371, 401(3), 1519, and 2071, and deliberately blocked, impeded, and obstructed all attempts by the Complainant to have the government produce and disclose **Brady actual innocent exculpatory and impeachment evidence** in its possession regarding the 04cr1224 (SDNY) and 05cr1115 (SDNY) criminal proceedings.

Page **6** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

from the SEC and FINRA **_have never been lawfully registered_** as broker-dealers as required by federal law, 15 USC 78o(a)(1).[4]

2. The plaintiffs in the 2219 lawsuit lacked Article III and 28 USC 1332(a) standing to have filed the 2219 lawsuit.

3. The 2219 district court lacked Article III and Section 1332(a) subject matter jurisdiction over the 2219 lawsuit, and accordingly, ipso facto, all orders, judgments, and proceedings therein are null and void ab initio, and moot.

4. The SEC and the DOJ in 2003 conducted an illegal and unconstitutional bootleg grand jury in the bogus Las Vegas commingled 03-0831 (D. NV) proceedings; used as a ruse—the Bootleg Grand Jury to circumvent the Federal Rules of Criminal Procedure, violated Complainant's right to remain silent, and illegally used to gather inadmissible evidence for illegal and unconstitutional use in the imminent criminal proceedings, **_U.S. v. Ware_**, 04cr1224 and **_U.S. v. Ware_**, 05cr1115 (SDNY).

5. The government's "principal witness" in 05cr1115 a person who claimed to be "Jeremy Jones" allegedly on September 22, 2006, entered an alleged Rule 11 guilty plea to the 05cr1115 superseding indictment (S1); allegedly entered into an alleged USSG 5k1.1 cooperation agreement; at sentencing received an alleged USSG 5k1.1 substantial assistance letter from the government, yet there is no record anywhere in any court of the alleged September 22, 2006, purported Rule 11 plea contract of any person by the name of "Jeremy Jones." Either the government lied and committed perjury regarding the September 22, 2006, alleged event, or the government, the Judge, Ramos, the U.S. Attorney (SDNY), Andre Damian Williams, Jr., and Merrick B. Garland are currently suppressing and concealing the judicial public records—with the assistance and enabling of the Judge, Ramos, required to have been disclosed "prior to trial" in 2007.

6. The government deliberately and intentionally violated the 04cr1224 Brady Court order and refused to disclose "prior to trial" its FRE 404(b) 'bad acts' witness, disgraced former SEC lawyer Jeffrey B. Norris' professional "bad acts"—while Norris testified for the government during the 04cr1224 trial in 2007 the government was in **_actual possession_**

---

[4] On May 17, 2021, fifteen (15) years after trial in **_U.S. v. Ware_**, 04cr1224 (SDNY) in 2007 FINRA certified that neither of the 02cv2219 (SDNY) plaintiffs had never lawfully registered as broker-dealers as required by federal, 15 USC 78o(a)(1), and NYS law; and therefore lacked Article III standing to have filed the 02cv2219 (SDNY) lawsuit, and the government lacked probable cause, and an 18 USC 3231 "offense" with respect to the 2219 lawsuit's null and void ab initio, and moot orders (GX 11, GX 24), judgments (GX 7), and proceedings.

Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

of Norris' SEC disciplinary file that showed that Norris had been sanctioned twice by the SEC for "professional misconduct" "associated with his government email account" and Norris was subsequently fired by the SEC for his professional misconduct, which the government is currently in possession of the Brady impeachment evidence, and in possession of Norris' medical records that showed that while Norris testified for the government during the 04cr1224 trial in 2007, Norris was then suffering from mental illness, and was under the care of a psychiatrist—Giglio impeachment evidence the government was required to have disclosed "prior to trial" pursuant to the Brady Court Order's written commands.

7. The government, the trial judge, William H. Pauley, III (deceased), and the Judge, Edgardo Ramos, since being assigned 05cr1115 in 2021 after the death of Judge Pauley, during the 05cr1115 trial in 2007 **deliberately and intentionally suppressed and concealed actual innocent Brady exculpatory and impeachment evidence in the possession of the SEC and DOJ** that established (1) there was no alleged "artificial" "inflation" of the "prices" of the INZS and SVSY stock—the subject matter of the (i) September 2005 perjured affidavit for the arrest warrant for the Complainant, and (ii) the subject matter of the 05cr1115 superseding (S1) indictment; (iii) the government suppressed and concealed Brady actual innocent exculpatory and impeachment evidence there was no alleged conspiracy between the Complainant and the government's trial witnesses; (iv) the government's 05cr1115 trial witnesses all testified pursuant to "cooperation agreements" which the ***government has never disclosed*** as required by the Brady Court Orders.

8. Concealed and suppressed that in December 20, 2007, in 02cv2219 (SDNY), Dkt. 90, after the statute of limitation had run on all claims in the complaint, the plaintiffs moved the district court (Sand, J.), ex parte, and voluntarily pursuant to Fed. R. Civ. P. 41(a)(2) to vacate, set aside, moot, ***vitiate and annul*** all orders, judgments, and all proceedings in 02cv2219 (SDNY), and by necessary implication the same in ***U.S. v. Ware***, 04cr1224 (SDNY)—that is, the orders and judgments (GX 7, GX 11, and GX 24) used by the government in its 04cr1224 indictment, and admitted at trial, ***were annulled*** on December 20, 2007. See ***A.B. Dick Co. v. Marr***, 197 F.2d 498, 501-02 (2d Cir. 1952) (voluntary dismissal of law by plaintiff annulled and vitiated all prior orders, judgments, and proceedings as "if the lawsuit had never been filed" and left the proceedings moot, and terminated the court jurisdiction over the matter). (emphasis added).

Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

A.    Reckless, Negligent, Irresponsible, Deliberate, and Intentional Errors and Frauds committed and made by the Chief Judge Debra Ann Livingston as a fraud on the court, and an overt act in the conspiracy to suppress and conceal actual innocent Brady exculpatory and impeachment evidence in the November 30, 2022, order, in refusing to conduct *any* investigation into the facts and evidence submitted to the Court of Appeals, or have the Judge, Edgardo Ramos, <u>*deny the charges under oath*</u>.

First, in the November 30, 2022, order, (the "Order") at 3, the Chief Judge claimed, "The misconduct complaint is difficult to understand,[5] …, the Complainant alleged that the Judge is an unindicted co-conspirator who, among other things, [aided, abetted, assisted, and enabled the Government to continue to violate two (2) Brady Court Orders entered on the sub judice criminal proceedings, to wit, (1) ***U.S. v. Ware***, 05cr1115 (SDNY), ("**1115**"), Dkt. 17, May 19, 2006, Tr. 5-10, Pauley, J. (deceased); and (2) ***U.S. v. Ware***, 04cr1224 (SDNY), ("**1224**"), Dkt. 32, August 10, 2007, Sweet, J. (deceased), jointly, (the "***Brady Court Orders***")]. Which all are true statements of fact, which are undenied and unopposed.

There is nothing in the record where the subject actually denied the allegations, the <u>***facts***</u>, and the claims under oath. Thus, the submitted <u>***facts***</u> remain true, and undenied. The Chief Judge is not lawfully permitted to respond on behalf of the subject judge where and if the ***facts*** are in dispute. Only the subject judge is permitted to deny or admit the facts, not the Chief Judge.

Conversely, the Chief Judge *is not permitted to admit* or **deny the facts** for the subject judge. Clearly, a procedural irregularity has occurred that impaired the proceeding's integrity and fidelity. See Rule 11(b).

As of today, January 9, 2023, it is an undisputed material fact the Government has yet to confirm in writing on the record that "all" Brady actual innocent exculpatory and/or impeachment evidence, Rule 5(f), Rule 16, U.S. Attorney's Manual, and Giglio materials have been disclosed and produced to the Complainant despite being ordered to produce and disclose

---

[5] The chief judge claimed the complaint is difficult to understand" yet the chief judge did not contact the Complainant and seek clarification of what the chief judge claimed she did not "understand" in the complaint. Clearly a dereliction of duty, and reckless application of judicial authority. If there was no alleged "understanding" by the chief judge, then, palpably, the chief judge was not in position to make any factual determinations adverse to a proper understanding of the complaint's claims, facts, and allegations.

Page **9** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

"all" Brady evidence "prior to trial" ***scheduled for 2007***. Accordingly, the Chief Judge is not in any ***credible*** position to make any binding determination with respect to the facts presented in the Complaint—any alleged unsupported and contrived ***purported*** fact-finding is in violation of the Act, 28 USC 351-364.

Moreover, exactly what methodology was used by the Chief Judge to make a binding determination the facts submitted, without any denial from the subject judge, were not credible is an obvious biased, partial, and conflicted personal conjecture, rather than a *finding* of facts. There is nothing, not one word, in the sardonic November 30, 2022, purported order, that supports the conclusion reached by the Chief Judge. Nothing whatsoever, other than a personal bias and prejudice regarding what the Chief Judge thinks, ***in her personal opinion is true***, rather than what the record and the evidence—see Dkt. 155 (22cv3409 (SDNY)) says is true.

Second, the dockets, the records, in the sub judice criminal proceedings, 1224, 1115, and the pending 28 USC 2241(c)(3) actual innocent habeas corpus petition ***Ware v. USA, Garland, Ramos, and Taylor-Swain,*** 22cv3409 (SDNY), named in the sworn declaration of fact numerous frauds, and criminal contempt, 18 USC 401(2), 401(2), of the outstanding Brady Court Orders committed by the Judge, Edgardo Ramos.

The record and the evidence supplied to the Chief Judge, who refused to conduct any credible "review"—how was the alleged "review" conducted was not stated in the November 30, 2022, purported order, of the records in 1224 and 1115, or to ***competently*** review the Brady Court Orders' written commands, which alone supports the undisputed fact the Government was and has been aided, abetted, assisted, and enabled by ***Edgardo Ramos***; has deliberately, intentionally, in bad faith, and as a fraud on the court, suppressed and concealed Brady actual innocent exculpatory and impeachment evidence before, during and after the 2007 trials in 1224 and 1115; and since the Judge, Ramos, has been assigned to the 1224 and 1115 cases he has deliberately, intentionally, with an evil and callous mind impeded, obstructed, and refused all attempts made by the Complainant to enforce the Brady Court Orders and have the Government certify pursuant to Fed. R. Crim. P. 5(f), 16, the Brady Court Orders, and the U.S. Attorney's Manual that all Brady evidence has been disclosed to the Complainant. See Dkt. 155 in 22cv3409(SDNY), Rule 5(f) Brady certification motion (pending).

Thus, at bottom the claim is that the Judge, Edgardo Ramos, has breached the Codes of Conduct for Federal Judges by aiding, abetting, assisting, and enabling the Government to be in civil and criminal contempt, 18 USC 401(2), 401(3), of the two Brady Court Orders entered in the 1224 and 1115 sub judice criminal proceedings since he was assigned in 2021; violated federal law, 18 USC 2, 241, 242, 371, 401(3), 1519, and 2071; and violated the Constitution's Due Process Clause. That is what the Complaint alleged supported by citations to the records, and supported with submission of a Declaration of fact which has not been denied by the subject Judge, Edgardo Ramos.

Page **10** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

==The Chief Judge is not lawfully permitted to deny and oppose, or admit the "facts" in the Complaint in place of a written and sworn denial or admission from the subject judge, Edgardo Ramos; and thus, the "facts" remain *undenied* for the purpose of this "review."[6]==

## B.    Federal law, 28 USC 455(a), 455(b)(1-5), and the Constitution required the Judge (Edgardo Ramos) to have recused himself from 1224, 1115, and the pending 22cv3409 (SDNY) 2241 habeas corpus proceedings.

Federal law and the Codes of Conduct for Federal Judges required the Judge to recuse and remove himself from all judicial involvement in the pending matters because, (I) he has been named as a hostile, adverse, material fact witness in the proceedings, (II) named as an adverse party-respondent, and (III) named an unindicted cocconspirator in the sworn and verified declaration of facts filed in support of the pending 22cv3409(SDNY) 2241 actual innocent habeas corpus petition—the Judge knew, or was reckless and negligent in not knowing he was judicially disqualified from any judicial participation in matters where he will be a material fact witness, and the Judge has continued to interfere, conceal, and cover up his criminal contempts of the Brady Court Orders by his knowing, and willful aiding, abetting, assisting, and/or enabling the

---

[6] The sworn undisputed or opposed "facts" and the records established a prima facie case of egregious violations of the federal criminal laws, 18 USC 2, 241, 242, 371, 401(2), 1519, and 2071—the concealment and suppression of judicial public records of the person the government claimed, without any proof in the record, on September 22, 2006, entered a Rule 11 plea of guilty in *U.S. v. Ware*, 05cr1115 (SDNY), S1, pursuant to a USSG 5k1.1 cooperation agreement. There is no record on any docket in the federal courts of the alleged September 22, 2006, Rule 11 plea contract. This should be a cause for great concern by a federal judge—if "Jeremy Jones" *actually* entered a Rule 11 plea to S1 where is the Rule 11 plea contract? If Jones "cooperated" pursuant to USSG 5k1.1 where is the cooperation agreement? Who has the judicial public records if the events *actually* occurred on September 22, 2006, as claimed by the government? ***Obviously, the district court and the government are required to have copies of all judicial public records regarding any alleged Rule 11 plea and USSG 5k1.1 cooperation by a government witness.*** So why have the district court (Ramos, J.), and the government not produced the judicial public records? What are their motivations? Who benefited? Who was harmed by the suppression and concealment of judicial public records? Those are issues the Chief Judge, Debra Ann Livingston, was required to have thoroughly investigated and referred the Complaint to the Director of the FBI and the DOJ's Division of Public Integrity with a judicial request to open a **criminal investigation** into the conduct of Edgardo Ramos, William H. Pauley, III, Robert W. Sweet, Robert D. Sack, Amalya L. Kearse, Barbara S. Jones, Michael H. Dolinger, Leonard B. Sand, Peter W. Hall, Robert A. Katzmann, Debra Ann Livingston, and Colleen McMahon. That was not done.

Page **11** of **14**
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

government to willfully violate and resist the Brady Court Orders' disclosure and production obligations.

## C.    The Chief Judge negligently and recklessly refused to investigate whether the government has fully and completely produced and disclosed "all" Brady actual innocent exculpatory and/or impeachment evidence required by the Brady Court Orders. See Rule 11(b).

Thus, to properly resolve the claims and ensure the public due process was delivered the Chief Judge was required to have conducted a **_thorough and complete_** investigation, (1) confirmed whether or not the **Brady Court Orders** have been fully complied with by the government by having the government provide written proof of complete production and disclosure; (2) have the subject judge, Edgardo Ramos, under oath admit or deny the allegations and provide an explanation for his judicial misconduct. That was deliberately not done by the Chief Judge Debra Ann Livingston. Not done as a deliberate and intentional omission, an overt act, _in furtherance of Edgardo Ramos and the DOJ's conspiracy to suppress and conceal actual innocent Brady exculpatory and impeachment evidence—an execrably and criminal fundamental miscarriage of justice_. An "unconscionable plan and scheme to commit a fraud on the court" and to impede and obstruct the "judicial machinery from performing as designed."

The Chief Judge negligently failed the public and the rule of law and with bias, prejudice, and gross negligence refused and deliberately failed to conduct any credible "review" of the records and the evidence submitted to the Chief Judge.

## D.    Conclusion.

The Codes of Conduct for Federal Judges, and 28 USC 351-364 required the Chief Judge to order the subject judge, Edgardo Ramos, to file a sworn response that admitted or denied the facts and allegations within the Complaint. That was not done. The Chief Judge illegally, unethically, criminally, 18 USC 2, 241, 242, and with bias, prejudice, and partiality substituted her own biased and prejudicial **_personal conjectures and views_** as fact. That was not lawfully proper or permissible according to the Act.

The records, the facts, and the evidence submitted with the Complaint fully supported all claims and allegations made against the subject judge, Edgardo Ramos, cf., Dkt. 155, 22cv3409

Page **12** of 14
Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

(SDNY) (Rule 5(f) Brady Disclosure and Production motion pending in the 2241 habeas corpus proceedings, where Ramos was named as an adverse party-respondent, yet has refused to recuse himself, and has entered a trivially frivolous and fraudulent order, Dkt. 126, to relieve himself of responding to the claims in the 2241 petition).

The Chief Judge, Debra Ann Livingston, violated the Codes of Conduct for Federal Judges by her reckless, negligent, and judicially irresponsible purported processing of the Complaint—the facts or allegations **have not been** denied by Ramos, and Ramos **has not** filed any sworn response in denial of the fact or claims, which are deemed true until Ramos responds.

The Chief Judge, Debra Ann Livingston, acted deliberately, intentionally, with reckless disregard for the truth, the facts, and the law; and rigged, fixed, impeded, obstructed, and has egregiously delayed justice, and the application of the rule of law to the criminal judicial misconduct perpetrated by Edgardo Ramos, William H. Pauley, III, Robert W. Sweet, Debra Ann Livingston, the government's prosecutors, and others.


## E.     Requested relief.

The Complainant is requesting that the November 30, 2022, purported order entered by the Chief Judge be vacated, set aside, and voided, and the Complaint be referred to the full Judicial Council;

Edgardo Ramos be ordered to not later than January 16, 2023, to file a sworn admission or denial to all facts, allegations, and claims in the Complaint and serve a copy of his response on the Complainant;

Complainant shall have 30 days from receipt of the response of Edgardo Ramos to file a reply;

The Judicial Council shall conduct a full and complete public investigation of the facts, allegations, and claims in the Complaint; and

The Judicial Council shall resolve all disputed facts or allegations by public evidentiary hearings and make a public report of the findings regarding this matter.


Submitted by:

Ulysses T. Ware

Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

January 9, 2023

January 30, 2023

I Ulysses T. Ware under oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC 1746, have this 9th day of January 2023, made this Petition for Review.

/s/ Ulysses T. Ware

# END OF DOCUMENT

Monday, January 9, 2023, resubmitted again on January 30, 2023.
Re: Petition to the Judicial Council for review of the Chief Judge's order entered on November 30, 2022, regarding Edgardo Ramos, File #02-22-90049-jm

23-865/23-869

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————X

ALPHA CAPITAL AKTIENGESELLSCHAFT;
AMRO INTERNATIONAL, S.A.; MARKHAM
HOLDINGS, LTD; STONESTREET LIMITED
PARTNERSHIP,

*Unregistered broker-dealers/15 USC 78p(b) statutory insiders, and statutory underwritten of Group Management Corp.*

Plaintiff,

v.                                                          02-cv-2219 (CM)

GROUP MANAGEMENT CORP, et al.

Defendant.

*Business Intelligence Group Doc. #0012312 CM/FVS Hobbs Act, RICO loan sharking/money laundering/public corruption investigation*

——————————————————————X

**Appx 57-5**

SDC SDNY
OCUMENT
LECTRONICALLY FILED
OC #:
ATE FILED: 10/27/22

## ORDER

McMahon, J.:

*McMahon is clearly attempting to cover up and conceal her and her spouse's personal ownership in the RICO, criminal usury convertible promissory note, which after Adar Bays are very toxic, and McMahon realizes she and Sica are about to lose +$22M, has panicked and acted emotionally given her tremendous financial and possible penal jeopardy.*

This action has been closed since December 2003. Since termination of this case, and two related criminal cases, Defendant Ulysses Thomas Ware ("Ware") – a former attorney – has flooded the Court with vexatious letters and filings despite admonitions to desist.[1] The Court of Appeals for the Second Circuit has entered a leave-to-file sanction against Ware. *United States v. Ware*, No. 07-5222 (2d Cir. Nov. 5, 2010).

Per the Court's prior orders in this action in 2011 (Dkt. No. 102) and 2019 (Dkt. No. 120), the Clerk of the Court was directed to accept no further filings from Ware except for papers directed to the United States Court of Appeals for the Second Circuit. Ware did appeal the denial of his 2011 motion, and the United States Court of Appeals for the Second Circuit, which denied his appeal on the ground that it was not a departure from his pattern of vexatious litigation. (Dkt. No. No. 106.) *See United States v. Ware*, No. 17-2214 (2d Cir. Oct. 27, 2017).

Despite the orders barring further filings, Ware has recently submitted another series of letters and motions. (Dkt. Nos. 122-136.) These include letters (1) requesting an emergency status conference regarding "fraud on the court" and civil and criminal contempt issues (Dkt. No. 122); (2) alleging conspiracy and seeking civil and criminal penalties from many federal judges, U.S. Attorneys, and others (Dkt. No. 124); (3) seeking an emergency "order to show cause" for civil and criminal contempt (Dkt. Nos. 130, 133); and (4) a declaration of probable cause to issue

---

[1]  By order dated November 27, 2013, for example, Judge Pauley noted that after his criminal action was closed, Ware filed "almost one hundred pro se letters and motions -- all equally without merit." Ware, No. 05-CR-1115 (WHP) (S.D.N.Y.) (ECF No. 222). *See EOUSA's March 20, 2023, FOIA response which contradicted Pauley's suggestion ... Brady evidence was suppressed and concealed by Pauley and the U.S. Atty's Office, Pauley lied and clearly committed judicial misconduct.*

civil contempt arrest warrants for individuals and entities, including many federal judges, U.S. Attorneys, and others (Dkt. No. 131).

*Apparently, McMahon has disregarded Judge Sand's Dec. 20, 2007, Doc. 90, Rule 41(a)(2) final order entered in this matter, see below ????* Judge Sand's order technically remains in effect – as I noted in my 2019 order directing the Clerk of Court to follow it. However, as there are no proceedings pending in the Second Circuit, the better course at this moment in time is to conclude that Judge Sand's order has expired and to direct that Ware show cause as to why he should not be prohibited from filing any further papers in this long-closed matter without leave of court – essentially, the same leave-to-file sanction that the Second Circuit has already entered against Ware. Ware has **thirty calendar days**, or until **November 26, 2022**, to respond to the order to show cause. If he fails to demonstrate any reason why he should be allowed to continue filing papers in this action, he will be barred from doing so without leave of court.

Dated: October 27, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

(BIG) Final Analysis (S. Henkel) 08/24/23:

Fact #1: On Dec. 20, 2007, Doc. 90, the plaintiffs in this matter, via counsel, Zitter, pursuant to Fed. R. Civ. Proc. 41(a)(2) voluntarily, after the statute of limitations had run on all claims in their complaint, requested the court to dismiss the lawsuit. That request was granted by the Hon. L.B. Sand (now deceased) on Dec. 20, 2007, Doc. 90. Given the statute of limitations had run on all claims at that time, the voluntary dismissal without prejudice, was legally a dismissal with prejudice--an adjudication on the merits in favor of the defendant and Ulysses T. Ware, Esq. Apparently Judge McMahon is not familiar with the legal effects of a Rule 41(a)(2) voluntary dismissal by plaintiffs, and her lack of understanding and full understanding of the relevant law, see L-3 Comm'cs, 921 F.3d at 18-19, there the Court of Appeals indicated the law is "well settled" and is considered "hornbook law" that all orders, judgments, and proceedings in the 02cv2219 (SDNY) lawsuit have been annulled, vitiated, and voided by Judge L.B. Sand's Dec. 20, 2007, Doc. 90, final order. That is the prevailing law in the Second Judicial circuit, and appears to the uniform and consensus rule of law in the U.S. federal courts. Thus, there is no legitimate or valid legal reason for Judge McMahon's atrocious and egregious judicial misconduct regarding this matter. There is no factual or legal basis for this purported "show cause order." In fact, Judge McMahon lacks jurisdiction over the 02cv2219 proceedings to enter this alleged court order, which according to the case law this order is moot and void ab initio.

It is my opinion based on the above analysis that is the confusion regarding this matter. It appears and the evidence confirms that Judge McMahon, Judge Ramos, and the Atlanta, GA bankruptcy court Chief Judge Wendy L. Hagenau have organized a conspiracy, and deliberately colluded and conspired to not enforce a valid court order, Doc. 90, entered by a U.S. federal court (Sand, J.). This is a very serious matter, and likely that McMahon, Ramos, and Hagenau are in violation of the U.S. federal criminal codes and statutes, likely Title 18, sections 2, 157, 371, 1341, 1343, 1519, a case can be made they have also violated section 1951, 1956-57, 1961(6)(B), 1962(a-d), and 2071.

This concludes my analysis of this matter. If you require additional research on this matter contact me via the usual channels. A report will be filed with BIG's NY sectional chief and the U.S. law enforcement staff's general counsel. Good luck.

**23-865/23-869**

Business Intelligence Group Doc. #A0001-9921LLE_Colleen McMahon, Frank V. Sica, Tailwind Capital Management, Wendy L. Hagenau, M. Regina Thomas, Edgardo Ramos, Laura Taylor-Swain, Damian Williams, Merrick B. Garland, et al.

We use cookies.   Learn More                                                    Accept

Bankruptcy Law
Oct. 16, 2023, 1:37 PM EDT

# Top Texas Judge 'Shocked' by Resignation of Bankruptcy Colleague

**Appx 57-4**

By James Nani and Alex Wolf

See In re Edgardo Ramos, 2022, Complaint of Judicial Misconduct, 02-22-90049-jm (2d Cir.), criminally obstructed and impeded by Debra Ann Livingston to cover up McMahon's money laundering and Damian Williams' Brady court order violations, 18 USC 401(3).

- 'We're all dumbfounded and surprised,' chief judge says
- Bankruptcy judge Jones, lawyer could face further fallout

The resignation of a top Texas bankruptcy judge is likely to resolve a judicial misconduct complaint against him, but recent revelations of his relationship with an attorney has stunned some colleagues.

Bankruptcy Judge David R. Jones on Sunday said he would resign after the Fifth Circuit issued a formal misconduct complaint against him. Jones, a prominent judge for the Houston bankruptcy court, had come under fire for failing to disclose that an attorney who previously worked at top Texas bankruptcy firm Jackson Walker LLP, Elizabeth Freeman, was his live-in girlfriend.

"We're all dumbfounded and surprised and shocked," Chief US District Judge Randy Crane of the Southern District of Texas said in an interview on Monday. "And nobody was more disappointed than our court."

Crane said the resignation resolves the judicial misconduct complaint brought by the US Court of Appeals for the Fifth Circuit against him.

"The most severe consequence of a judicial misconduct complaint is the removal from office," Crane said. "So there's no longer any purpose for pursuing the judicial misconduct complaint."

18 USC 2, 157, 371, 1519, and 2071 crimes were committed in In re Group Management Corp., 03-93031 (BC NDGA) Chapter 11.

However, some bankruptcy specialists say the trouble may only be getting started for Jones, who could face bankruptcy fraud charges. The case could have wide-ranging repercussions for the popularity of the court as a venue for top Chapter 11 cases. Wendy L. Hagenau, M. Regina Thomas, Coleman Ray Mullins, Joyce Bihary, Margaret H. Murphy, Kilpatrick, Townsend, & Stockton, LLP

A mediator for Chief Judge Priscilla Richman of the US Court of Appeals for the Fifth Circuit, who issued the complaint against Jones, declined to comment on the facts of the case or the investigation. But he referred to the rules for judicial conduct, which say complaints can be concluded if remedial action is moot.

"We had discussions with Judge Jones as to why this was kept secret to everyone," Crane said. "He has his reasons. And he believed that he was complying with his ethical obligations. Obviously, Ms. Freeman felt the same. She was half of this problem. They both felt like they needed—wanted—to keep this relationship secret."

Q--Paul, how do you think the Court of Appeals will handle McMahon's obvious concealed and suppressed actual conflict of interest in the 02cv2219 (SDNY) case? They don't really have any other option other than to immediately bring charges against McMahon? Maybe she will resign like Jones did? I don't know, but this is only the tip of the iceberg. I'm sending you super secret docs and emails we got from _____ that implicate Ramos, Gibson, Dunn, Damian Williams, and Alexander Southwell in a conspiracy. Mind blowing once you see the info.

The court is prepared to consider any requests from parties involved in bankruptcies Jones oversaw to review his court decisions, Crane said. But Crane said he doesn't believe there will be many requests and that for the most part people are content with how their cases were handled.

"These are both very respected people that do a good job," Crane added. "So it's just very disappointing."

Earlier: Bankruptcy Plan Challenged After Judge Faces Ethics Probe (1)

**Potential Fallout**

Paul, Chief Circuit Judge Debra Ann Livingston is in very hot water after how she handled Ware's judicial complaint, 02-22-90049-jm (2d Cir.), regarding Ramos ... I have a copy that I am sending over to you today. Please review and advise the best way to handle this. Livingston is a real piece of work.

Adam Levitin, a Georgetown University law professor, said Jones' resignation isn't the end of the story. Jones and Freeman both still face the possibility of disbarment and criminal charges for bankruptcy fraud, he said.

There are also questions about who in the Houston bar and bench knew of the relationship and failed to report it as required by legal ethics rules, he said.

Fellow Houston bankruptcy judge Marvin Isgur, a noted friend and mentor to Jones, previously overruled an attempt to have Jones recused from a case involving Jackson Walker over alleged bias.

This is big, likely bribes, kickbacks, payoff, and other illegal gratuities were covertly paid by Kirkland, and the other law firms to steer the cases to Jones and Freeman ... this really stinks. We will get to the bottom of this very soon.

Levitin noted Kirkland & Ellis LLP, a top firm representing large companies in Chapter 11, routinely would hire Jackson Walker. Freeman left Jackson Walker in late 2022.

"This is all going to take a while to play out, but in the meantime, Houston is probably finished as a go-to bankruptcy filing venue," Levitin said.

Former Massachusetts bankruptcy judge Joan Feeney similarly questioned if Houston would remain a "magnet court" for large Chapter 11 cases in light of Jones' admission and resignation.

"It seems to me that these law firms who choose where to file may not want to choose the Southern District of Texas anymore," she said, noting that pharmacy chain Rite Aid Corp. just elected to file for bankruptcy relief in New Jersey.

Feeney also suspected there could be ramifications for Jackson Walker, saying "all of the facts have not come forward yet as to whether the lawyers violated any of the bankruptcy code disclosure violations."

Paul, its looks like the Atlanta, GA law firm KTS is toast ... they are on the hook for at least $250M ... they have no defense for their misconduct and obvious bankruptcy fraud.

Jackson Walker has said it acted responsibly and in a timely fashion when it learned about the relationship in March 2021.

**Immediate Steps**

Crane said Jones' resignation is effective Nov. 15, which will allow him to get his benefits in order, get his get his staff taken care of, and perform any clerical work that the court might need of him, he said.

"He will not be working on any cases or consulting with any judges," Crane said. "Sort of not quarantined, but put a Chinese wall around him so that whatever taint he might have will not be attributed to any of the other judges."

Isgur has agreed to take over Jones' complex case load, Crane said. US Bankruptcy Judge Christopher Lopez has also been presiding over large cases in the district.

Chief US Bankruptcy Judge Eduardo V. Rodriguez may also step in to help on cases, Crane said.

The more than 3,000 consumer cases Jones had will be distributed to other four remaining judges in seven different court houses, he said.

Crane said his office on Monday plans to request from the Judicial Council permission to fill the the vacancy created by the resignation. That process could take three or four months, he said.

To contact the reporters on this story: James Nani in New York at jnani@bloombergindustry.com; Alex Wolf in New York at awolf@bloomberglaw.com

To contact the editors responsible for this story: Maria Chutchian at mchutchian@bloombergindustry.com; Anna Yukhananov at ayukhananov@bloombergindustry.com

**Related Stories**   Texas Bankruptcy Judge Resigns After His Ethics Questioned (2)
Oct. 15, 2023, 10:17 AM EDT

© 2023 Bloomberg Industry Group, Inc.   All Rights Reserved

# 23-865/23-869　　Appx 57-3

United States Court of Appeals
Fifth Circuit
**FILED**
October 13, 2023
Lyle W. Cayce
Clerk

# United States Court of Appeals
# for the Fifth Circuit

———————————

### COMPLAINT NUMBER: 05-24-90002

Doc. #00012321 CM/FVS---confidential

### COMPLAINT IDENTIFIED BY THE CHIEF JUDGE OF THE FIFTH CIRCUIT COURT OF APPEALS AGAINST UNITED STATES BANKRUPTCY JUDGE DAVID R. JONES, SOUTHERN DISTRICT OF TEXAS, UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

———————————

Business Intelligence Group re Colleen McMahon & Frank V. Sica, RICO Hobbs Act, money laundering/loan sharking/obstruction of justice/public corruption/murder-for-hire investigation.

Pursuant to Rule 5 in Article III of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, I am identifying a Complaint against United States Bankruptcy Judge David R. Jones of the Southern District of Texas.

Rule 5 provides that when a chief judge has information constituting reasonable grounds for inquiry into whether a covered judge has engaged in misconduct, the chief judge may conduct an inquiry, as he or she deems appropriate, into the accuracy of the information. I have conducted an inquiry and find there is probable cause to believe that misconduct by Judge Jones has occurred. It does not appear that an informal resolution is feasible at this time. I am therefore entering this written order stating the reasons for identifying a complaint.

Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017. Elizabeth Freeman worked in Judge Jones's chambers as a law clerk. Subsequently, she was a partner in the Jackson Walker LLP law firm, it appears from at least 2017 until December 2022. She formed The

Assisted by IRNewswires Public Corruption Investigators Meredith Kammler and Alan Reitman for the Ulysses T. Ware actual innocent project

Law Office of Liz Freeman, from which she has practiced since approximately December 2022.

Members of the Jackson Walker LLP firm have regularly appeared before Judge Jones since 2017. Judge Jones has approved attorneys' fees payable to that firm in which supporting documentation, that was submitted to Judge Jones and is part of public records, reflects that services by Elizabeth Freeman were performed in connection with a number of cases for which fees were sought and approved, though Elizabeth Freeman was not shown as counsel of record on the face of pleadings. The amounts billed for Elizabeth Freeman's services in those cases were substantial. The fees approved by Judge Jones for Jackson Walker LLP were likewise substantial. Judge Jones approved fees payable to Jackson Walker LLP in other cases in which Elizabeth Freeman does not appear to have provided any legal services or advice. However, at all times when Elizabeth Freeman was a Jackson Walker LLP partner, and regardless of whether she provided services or advice in a case, there is a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones. Judge Jones did not recuse in Jackson Walker LLP cases nor did he disclose his relationship with Elizabeth Freeman to the parties or their counsel in which Jackson Walker LLP appeared before him.

A motion to recuse Judge Jones was filed in a case in which Jackson Walker LLP was counsel of record. The basis of the motion was an allegation that Judge Jones was involved in a romantic relationship with Elizabeth Freeman. Judge Jones referred the motion to recuse to another bankruptcy judge but did not disclose to that judge the facts regarding his relationship with Ms. Freeman. On information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms. Freeman or that they were cohabiting. The motion to recuse was denied and appealed to a federal district court judge, and on information and

belief, Judge Jones did not apprise that district court judge of the relationship with Ms. Freeman, and that judge was also unaware of the facts regarding the relationship. The appeal was denied. There is a reasonable probability that if Judge Jones had disclosed the facts concerning his relationship with Elizabeth Freeman to his fellow bankruptcy judge, to whom the motion to recuse was referred, the motion to recuse would have been granted. Because the motion was denied, and Judge Jones did not voluntarily recuse, Judge Jones presided in the case and approved Jackson Walker LLP's attorneys' fees. Court records appear to reflect that those fees included amounts for services Elizabeth Freeman performed in connection with the case.

It appears that Judge Jones accepted an appointment from another bankruptcy judge to act as mediator in a matter in which Ms. Freeman, as a shareholder or partner in The Law Offices of Liz Freeman, was attorney of record for a party and participated in the mediation; that Judge Jones did not disclose his relationship with Ms. Freeman to the parties, to their counsel or to the bankruptcy judge who appointed Judge Jones. Judge Jones conducted the mediation to a conclusion.

In another matter over which Judge Jones presided, it appears that Judge Jones approved a fee application submitted by The Law Offices of Liz Freeman. It does not appear that any party or any other counsel in that proceeding was apprised of Judge Jones' relationship with Ms. Freeman.

It further appears that Judge Jones recommended to other judges in the Southern District of Texas that Ms. Freeman be appointed to the Lawyer Admissions Committee for the Southern District of Texas Bankruptcy Court. Judge Jones did not disclose his relationship with Ms. Freeman to those considering the appointment.

Judge Jones and Elizabeth Freeman are not married to one another, to the best of my knowledge, and do not hold themselves out as spouses.

However, the Commentary to Canon 3C of the Code of Conduct for United State Judges provides "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." In this regard, *see also* Guide to Judiciary Policy, vol. 2, sec. 220, Advisory Opinion 58; *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1112-14 (5th Cir. 1980).

Based on the foregoing, there is probable cause to believe that Judge Jones has engaged in misconduct, as that term is defined or described in the code of conduct applicable to federal judges including bankruptcy judges. In particular:

1)      The Code of Conduct for United States Judges provides in Canon 2 that "a judge should avoid impropriety and the appearance of impropriety in all activities." All of the alleged conduct set forth above appears to constitute impropriety or at least the appearance of impropriety.

2)      Canon 2B provides in part that "[a] judge should not allow family, . . . or other relationships to influence judicial conduct or judgment."

3)      Canon 3C(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

4)      Canon 3C(1) provides a non-exclusive list of circumstances in which a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. Included in the list, in subsection 3C(1)(c), is an instance in which "the judge knows that the judge, . . . or the judge's spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding."

5)    The non-inclusive list also includes, in Canon 3C(1)(d), instances in which

> the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:
>
>     . . .
>
> (ii) acting as a lawyer in the proceeding; [or]
>
> (iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. . . .

6)    The Commentary to Canon 3C(1)(d)(ii) provides:

> The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

7)    Canon 3B(3) provides "(3) [a] judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism."

Pursuant to Rule 11 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, Judge Jones is invited to respond either orally or in writing to this Complaint.

As a general matter, Rule 23 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, provides that the contents of a complaint against a judge are confidential. However, that Rule also provides that a chief judge "may disclose the existence of a proceeding under these Rules when necessary or appropriate to maintain public confidence in the judiciary's ability to redress misconduct or disability." I conclude that disclosure of the existence of this complaint is necessary and appropriate, particularly because many of the allegations regarding Judge Jones' conduct have been made public in the press and in the filing of a law suit against Judge Jones.

Pursuant to 28 U.S.C. § 351(b) and Rule 5, I hereby identify a complaint against United States Bankruptcy Judge David R. Jones. As provided by Rule 5, I will begin the review provided for in Rule 11 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

Date: October 13, 2023

Priscilla Richman

Priscilla Richman
Chief Judge

6

# 23-865/23-869      Appx 57-3

United States Court of Appeals
Fifth Circuit

**FILED**

October 13, 2023

Lyle W. Cayce
Clerk

# United States Court of Appeals
# for the Fifth Circuit

------------------

COMPLAINT NUMBER: 05-24-90002

Doc. #00012321 CM/FVS---confidential

COMPLAINT IDENTIFIED BY THE CHIEF JUDGE OF THE FIFTH
CIRCUIT COURT OF APPEALS AGAINST UNITED STATES
BANKRUPTCY JUDGE DAVID R. JONES,
SOUTHERN DISTRICT OF TEXAS,
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

------------------

Business Intelligence Group re Colleen McMahon & Frank V. Sica, RICO Hobbs Act, money laundering/loan sharking/obstruction of justice/public corruption/murder-for-hire investigation.

Pursuant to Rule 5 in Article III of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, I am identifying a Complaint against United States Bankruptcy Judge David R. Jones of the Southern District of Texas.

Rule 5 provides that when a chief judge has information constituting reasonable grounds for inquiry into whether a covered judge has engaged in misconduct, the chief judge may conduct an inquiry, as he or she deems appropriate, into the accuracy of the information. I have conducted an inquiry and find there is probable cause to believe that misconduct by Judge Jones has occurred. It does not appear that an informal resolution is feasible at this time. I am therefore entering this written order stating the reasons for identifying a complaint.

Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017. Elizabeth Freeman worked in Judge Jones's chambers as a law clerk. Subsequently, she was a partner in the Jackson Walker LLP law firm, it appears from at least 2017 until December 2022. She formed The

Assisted by IRNewswires Public Corruption Investigators Meredith Kammler and Alan Reitman for the Ulysses T. Ware actual innocent project

Law Office of Liz Freeman, from which she has practiced since approximately December 2022.

Members of the Jackson Walker LLP firm have regularly appeared before Judge Jones since 2017. Judge Jones has approved attorneys' fees payable to that firm in which supporting documentation, that was submitted to Judge Jones and is part of public records, reflects that services by Elizabeth Freeman were performed in connection with a number of cases for which fees were sought and approved, though Elizabeth Freeman was not shown as counsel of record on the face of pleadings. The amounts billed for Elizabeth Freeman's services in those cases were substantial. The fees approved by Judge Jones for Jackson Walker LLP were likewise substantial. Judge Jones approved fees payable to Jackson Walker LLP in other cases in which Elizabeth Freeman does not appear to have provided any legal services or advice. However, at all times when Elizabeth Freeman was a Jackson Walker LLP partner, and regardless of whether she provided services or advice in a case, there is a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones. Judge Jones did not recuse in Jackson Walker LLP cases nor did he disclose his relationship with Elizabeth Freeman to the parties or their counsel in which Jackson Walker LLP appeared before him.

A motion to recuse Judge Jones was filed in a case in which Jackson Walker LLP was counsel of record. The basis of the motion was an allegation that Judge Jones was involved in a romantic relationship with Elizabeth Freeman. Judge Jones referred the motion to recuse to another bankruptcy judge but did not disclose to that judge the facts regarding his relationship with Ms. Freeman. On information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms. Freeman or that they were cohabiting. The motion to recuse was denied and appealed to a federal district court judge, and on information and

belief, Judge Jones did not apprise that district court judge of the relationship with Ms. Freeman, and that judge was also unaware of the facts regarding the relationship. The appeal was denied. There is a reasonable probability that if Judge Jones had disclosed the facts concerning his relationship with Elizabeth Freeman to his fellow bankruptcy judge, to whom the motion to recuse was referred, the motion to recuse would have been granted. Because the motion was denied, and Judge Jones did not voluntarily recuse, Judge Jones presided in the case and approved Jackson Walker LLP's attorneys' fees. Court records appear to reflect that those fees included amounts for services Elizabeth Freeman performed in connection with the case.

It appears that Judge Jones accepted an appointment from another bankruptcy judge to act as mediator in a matter in which Ms. Freeman, as a shareholder or partner in The Law Offices of Liz Freeman, was attorney of record for a party and participated in the mediation; that Judge Jones did not disclose his relationship with Ms. Freeman to the parties, to their counsel or to the bankruptcy judge who appointed Judge Jones. Judge Jones conducted the mediation to a conclusion.

In another matter over which Judge Jones presided, it appears that Judge Jones approved a fee application submitted by The Law Offices of Liz Freeman. It does not appear that any party or any other counsel in that proceeding was apprised of Judge Jones' relationship with Ms. Freeman.

It further appears that Judge Jones recommended to other judges in the Southern District of Texas that Ms. Freeman be appointed to the Lawyer Admissions Committee for the Southern District of Texas Bankruptcy Court. Judge Jones did not disclose his relationship with Ms. Freeman to those considering the appointment.

Judge Jones and Elizabeth Freeman are not married to one another, to the best of my knowledge, and do not hold themselves out as spouses.

However, the Commentary to Canon 3C of the Code of Conduct for United State Judges provides "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." In this regard, *see also* Guide to Judiciary Policy, vol. 2, sec. 220, Advisory Opinion 58; *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1112-14 (5th Cir. 1980).

Based on the foregoing, there is probable cause to believe that Judge Jones has engaged in misconduct, as that term is defined or described in the code of conduct applicable to federal judges including bankruptcy judges. In particular:

1) The Code of Conduct for United States Judges provides in Canon 2 that "a judge should avoid impropriety and the appearance of impropriety in all activities." All of the alleged conduct set forth above appears to constitute impropriety or at least the appearance of impropriety.

2) Canon 2B provides in part that "[a] judge should not allow family, . . . or other relationships to influence judicial conduct or judgment."

3) Canon 3C(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

4) Canon 3C(1) provides a non-exclusive list of circumstances in which a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. Included in the list, in subsection 3C(1)(c), is an instance in which "the judge knows that the judge, . . . or the judge's spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding."

5) The non-inclusive list also includes, in Canon 3C(1)(d), instances in which

> the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:

> . . .

> (ii) acting as a lawyer in the proceeding; [or]

> (iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. . . .

6) The Commentary to Canon 3C(1)(d)(ii) provides:

> The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

7) Canon 3B(3) provides "(3) [a] judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism."

Pursuant to Rule 11 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, Judge Jones is invited to respond either orally or in writing to this Complaint.

As a general matter, Rule 23 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, provides that the contents of a complaint against a judge are confidential. However, that Rule also provides that a chief judge "may disclose the existence of a proceeding under these Rules when necessary or appropriate to maintain public confidence in the judiciary's ability to redress misconduct or disability." I conclude that disclosure of the existence of this complaint is necessary and appropriate, particularly because many of the allegations regarding Judge Jones' conduct have been made public in the press and in the filing of a law suit against Judge Jones.

Pursuant to 28 U.S.C. § 351(b) and Rule 5, I hereby identify a complaint against United States Bankruptcy Judge David R. Jones. As provided by Rule 5, I will begin the review provided for in Rule 11 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

Date: October 13, 2023

Priscilla Richman

Priscilla Richman
Chief Judge

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

https://www.wsj.com/articles/houston-bankruptcy-judge-jones-resigns-under-misconduct-investigation-7784fe8c

**23-865/23-869**

PRO BANKRUPTCY

# Houston Bankruptcy Judge David Jones Resigns Under Misconduct Investigation

The judge is under investigation by a federal appeals court after The Wall Street Journal reported that he failed to disclose his romantic relationship with a local lawyer whose fees he approved

By *Alexander Gladstone* Follow
*Updated Oct. 15, 2023 5:50 pm ET*



Appx. 57-2

Colleen McMahon, Laura Taylor-Swain, Edgardo Ramos, Wendy L. Hagenau, Amalya L. Kearse, Robert D. Sack, Debra Ann Livingston, Thomas W. Thrash, Jr., Kent J. Dawson, M. Regina Thomas, Ruby Krajick, Katherine Polk-Failla, LeShan DeArcy-Hall, and Damian Williams and Merrick B. Garland are required to resign from all public office immediately.

Judge David Jones earlier this month said that he believed he was entitled to a degree of privacy about his relationship with bankruptcy lawyer Elizabeth Freeman. PHOTO: STAFF/REUTERS

Houston bankruptcy judge David R. Jones resigned from the bench while under a misconduct investigation by a federal appeals court over his failure to disclose his yearslong romantic relationship with a bankruptcy lawyer who had business before his court.

Jones's resignation from the U.S. Bankruptcy Court in Houston comes after the appellate court that appointed him found probable cause that he committed misconduct by failing to disclose his romantic relationship with bankruptcy lawyer Elizabeth Freeman. Jones told The Wall Street Journal earlier this month that he and Freeman have been in a relationship for years and live together at a home in the Houston area.

Neither Jones nor Freeman had previously disclosed their relationship in court while Freeman worked on major corporate reorganizations that he oversaw. The revelation of their relationship and Jones's decision to resign raises uncertainty about past proceedings he handled in Houston's bankruptcy court, a premier venue for troubled companies to restructure debt.

"I have always said that the bankruptcy process should be about the participants and the preservation of jobs," Jones said on Sunday. "I have become a distraction to the good work that the court does. To end that distraction and hopefully return focus, I have resigned."

The bankruptcies that Freeman worked on and that Jones oversaw included some of the largest Chapter 11 cases of recent years, such as retailers JCPenney and Neiman Marcus and oil-and-gas driller Chesapeake Energy. In each of those cases and others, Freeman, then a partner at the Texas law firm Jackson Walker, billed hours along with her colleagues for their work representing the companies in bankruptcy, according to Chapter 11 records.

District Judge (SDNY) Colleen McMahon was required to have disclosed her close, personal relationship with Frank V. Sica, he alleged spouse, and was required to have disclosed her personal ownership in + $22,000,000 in RICO criminal usury, loan sharking convertible promissory note investments (CPNs)--the same subject matter in controversy then pending before her in 02cv2219 (SDNY) litigation.

Business Intelligence Group Colleen McMahon/Frank V. Sica's Loan sharking/money laundering/public corruption investigation Doc. #000101623

Pages 0001-0002

Jones approved more than $1 million in legal fees billed by Freeman over 16 corporate bankruptcy cases from 2018 to 2021 when they shared an address, the Journal found through a review of court records.

Jones had said in a Friday court hearing that he would step down from overseeing large corporate reorganizations, though didn't say at the time that he was resigning from the bench. His Friday announcement came after the Journal had submitted an inquiry to him regarding the more than $1 million in legal fees he had approved from Freeman and property records stating that they jointly own a house in the Houston area.

Jones faces an ethics investigation by the U.S. Court of Appeals for the Fifth Circuit, which appointed him to the bench in 2011. On Friday, the chief justice of the Fifth Circuit U.S. Court of Appeals filed a complaint against Jones, finding that there was probable cause he had committed misconduct by failing to disclose his relationship with Freeman.

He told the Journal earlier this month that he believed he didn't need to disclose his relationship with Freeman previously because the couple aren't married and there was no economic benefit to him from her work at Jackson Walker. Jones also told the Journal that he would have had a recusal obligation for cases involving Freeman's firm only if they had been married and had communal property. He added earlier this month that he believed he was entitled to a degree of privacy about their relationship.

Property records reviewed by the Journal show that the couple began living at the same address in the Houston area in 2017. A survivorship agreement attached to the deed of the house lists both Jones and Freeman as owners and states that the two own the property jointly. Jones previously declined to comment to the Journal on the fees billed by Freeman that he approved and the property records for his house.

The official code of conduct for U.S. judges, which covers bankruptcy judges, states that a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. Reasons for disqualification include instances in which the judge's spouse is acting as a lawyer in the proceeding. Those same recusal considerations "should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship," according to the code of conduct.

Priscilla Richman, the chief justice of the Fifth Circuit, stated in the complaint she filed against Jones on Friday that Jones approved "substantial" legal fees billed by Freeman without disclosing the relationship. Freeman also worked on other cases over which other Houston bankruptcy judges presided and Jones served as mediator.

Write to Alexander Gladstone at alexander.gladstone@wsj.com

*Appeared in the October 16, 2023, print edition as 'Bankruptcy Judge Resigns Amid Probe'.*

Records obtained by BIG from the Administrative Office of the U.S. Courts confirmed that Colleen McMahon and Frank V. Sica personally own + $22,000,000 in RICO criminal usury, convertible promissory note investments--the same subject matter as the 02cv2219 (SDNY) lawsuit. McMahon was required to have recused herself from the 02cv2219 litigation.

# 23-865/23-869

## Office of Ulysses T. Ware

123 Linden Blvd
Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

# Appx 57-1

**December 25, 2022**

Business Intelligence Group Doc. #00012982 CM/FVS re Loan sharking/money laundering Public corruption investigation.

<u>**Via regular U.S. mail on December 25, 2022**</u>

The Hon. District Judge Colleen McMahon
Thurgood Marshall United States Courthouse
40 Foley Sq.
New York, NY 10007

McMahon conspired and has actually obstructed justice by ordering the District Court (SDNY) to not file and docket this court filing, a judicial public record--a criminal violation of 18 USC 2, 241, 242, 371, 1512, and 2071, which exposed McMahon and SICA's crimes.

Re: ***Alpha Capital, AG, et al. v. Group Management Corp., et al.,*** 02cv2219 (SDNY), ("**2219**").

***<u>Administrative Matters Letter Brief Application</u>*** to (1) clarify, Rule 59(e), Dkt. 151, (2) permission to file a Fed. R. Civ. P. 60(d)(4) motion to vacate Dkt. 151, Order for (i) mootness, and (ii) lack of due process of law; and (3) application for a stay of Dkt. 151 (Order) pending the United States Attorney (SDNY) appearance herein and filing its litigation position with respect to GX 1-4, GX 5, (jointly, (the "**Criminal Usury Subject Matter**"); and GX 7 (Dkt. 54), GX 11 (Dkt. 58), and GX 24 (Dkt. 65).

Judge McMahon:

Ulysses T. Ware, the Prevailing Party with respect to the 2219 proceedings—see 12/20/2007, Dkt. 90, superseding Rule 41(a)(2) final judgment, (the "**Rule 41 Final Judgment**"), the Petitioner herein, respectfully for good cause shown, applies to the Honorable District Court to clarify outstanding issues <mark>with respect to Dkt. 151,</mark> Order, matters predicated on "**hornbook law**" legal precedents of the Second Circuit Court of Appeals and other federal appeals courts. See ***L-3 Comm'cs***, 921 F.3d at 18-19, infra.

McMahon knows that " ... it is hornbook law ..." that all orders entered in 02cv2219 (SDNY) after Dec. 20, 2007, Dkt. 90, are null and void ab initio, and moot--that is, Dkt. 119, 120, 137, 141, and 151, see L-3 Comm'cs, 921 F.3d at 18-19.

Page **1** of **7**
Sunday, December 25, 2022
(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6)(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

McMahon deliberately and intentionally entered the bogus and manifestly frivolous and moot show cause order, Dkt. 137, as the criminal means and method to obstruct justice, and conceal her, Sica's, Alpha Capital, AG, LH Financial Services, and others RICO loan sharking/money laundering/ attempted murder/kidnapping, and other Hobbs Act crimes of violence committed against Ulysses T. Ware, Esq.

**Administrative Issue #1: A transcript of the required due process hearing apropos the leave to file sanction does not exist.**

Judge McMahon, on December 23, 2022, Petitioner was informed by the District Court (SDNY) personnel that "no transcript exists for any hearings conducted prior to December 22, 2022," the entry date of Dkt. 151, regarding the required due process hearing required by Second Circuit precedents to have been conducted "prior to" entry of Dkt. 151.[1]

Accordingly, Petitioner respectfully seeks instruction from the District Court regarding the administrative process to obtain a copy of the due process hearing's transcript vis-à-vis Dkt. 137 and Dkt. 151 to perfect the appellate record.

**Administrative Issue #2: Request for Clarification.**

Petitioner submits this letter brief, (the "**Letter Brief**"), and respectfully applies to the Court for (I) clarification of Dkt. 151, and (II) for permission for (1) an order authorizing the filing of a Rule 60(b)(4) motion to vacate Dkt. 50, 54, 58, 65, 80, 102, 120, 137, 141, and 151, (the "**Moot Orders**"); (2) to vacate 102, 120, 137, 141, and 151 for lack of due process of law—the required due process hearing was not conducted by the Court prior to entry of the leave to file orders (Dkt. 102, Dkt. 137, 141, and 151); and (3) for an order directed to the parties in interest, the 2219 plaintiffs, and the United States, to immediately appear and show cause why 2219 is not moot for lack of Article III and 28 USC 1332(a) subject matter jurisdiction over the Criminal Usury Subject Matter, GX 1-4 (the "**GPMT's criminal usury convertible promissory notes**"), and GX 5 (the "**2219 plaintiffs' criminal usury underwriting contract**"), jointly, (the "**Criminal Usury Subject Matter**").[2]

---

[1] "The *unequivocal rule* in this circuit is that the [02cv2219, 05cr1115, or 04cr1224] distinct court[s] **may not** impose a filing injunction on a litigant *sua sponte* without providing the litigant [Ulysses T. Ware] with **notice and _an opportunity to be heard_**." *Moates v. Barkley*, 147 F.3d 207 (2d Cir. 1998). "Indeed, we **strictly** enforced this rule when a district court in our circuit had earlier imposed a filing ban on this very litigant *without providing him with notice or a __hearing__*." See *Moates v. Rademacher*, 86 F.3d at 15. (emphasis added); also see *Board of Managers of 2900 Ocean Avenue Condominium v. Bronkovic*, 83 F.3d 44 (1996) (2d Cir. 1996) ("Because the court enjoined farther filings and removals to the Eastern District *sua sponte* without giving defendants [Ulysses T. Ware] notice or an opportunity to be heard, _**our precedent requires that we reverse and remand so that the district court may conduct such a hearing**_."). (emphasis added).

[2] Petitioner respectfully requests that if the Court is inclined to grant permission to file the requested Rule 60(b)(4) motion, the Court accepts this letter brief, (the "**Letter Brief**"), as the application for the

Page **2** of **7**
Sunday, December 25, 2022
(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6)(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

Judge McMahon, respectfully, Petitioner in compliance with the Court's Order, Dkt. 151 (12/22/22), Petitioner is not seeking to "prolong" the 2219 matter. Rather, ==Petitioner is bringing to the Court's attention relevant on-point binding Second Circuit precedent and authority for Petitioner's position that the 2219 proceedings, orders, and judgments went moot, were vitiated, and annulled on 12/20/2007, Dkt. 90.== That is the sole purpose for Petitioner's communication with the Court, and to perfect the record for subsequent appellate review—which requires Petitioner to *first* present the argument to the District Court. Petitioner has no intentions or desires to "prolong" the proceedings. Accordingly, Petitioner respectfully requests that the Honorable District Court accept this *Letter Brief Application* in good faith based on the prevailing Second Circuit's binding precedents, and the indisputable fact of the Rule 41 Final Judgment.

**Good Cause Shown.**

Petitioner for good cause, (a) based in Circuit authority, the law, ***L-3 Comm'cs***, infra, and (b) based in fact, the 12/20/2007, Dkt. 90, Rule 41 Final Judgment, seeks the Court's permission to file this Rule 60(b)(4) Letter Brief motion for the following reasons:

1. because former District Judge Sand on 12/20/2007, Dkt. 90, *after the statute of limitation had run on all claims in the 2219 complaint*, on ex parte motion by the 2219 plaintiffs, vacated, set aside, reversed, *vitiated, and annulled* all aspects of the proceedings, ***annulled all prior orders and judgments***, rendered the 2219 proceedings moot, and terminated the Court jurisdiction over the Criminal Usury Subject Matter.[3]

---

requested stay, the Rule 60(b)(4) motion to vacate Dkt. 151, and the Rule 12(h)(3) motion challenge to the Court's Article III and 28 USC 1332(a) jurisdiction over the Criminal Usury Subject Matter, GX 1-4, and GX 5. If the Court is not inclined to grant permission to clarify Dkt. 151 and permission to file the Rule 60(b)(4) application, Petitioner respectfully requests the District Court to enter an order on the docket that denies the requested relief that enables *meaningful* appellate review—that is, with findings of fact, conclusions of law, and citations to the records regarding all factual findings.

[3] **United States v. L-3 Comm'cs EOTech, Inc.,** 921 F.3d 11, 18-19 (2d Cir. 2019). (Kearse, Katzmann, and Pooler) ("it is ***hornbook law*** that "a *voluntary* dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed," Wright & Miller § 2367, at 559 (emphasis added); see, e.g., 8 Moore's Federal Practice § 41.34[6][d] (2018) (stipulation for dismissal "without prejudice *terminates the action as if it were never filed*" (emphasis added)). ***This long established principle*** **has been recognized by this Circuit and most others**. See, e.g., **A.B. Dick Co. v. Marr**, 197 F.2d 498, 502 (2d Cir. 1952) ("voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned ***the same as though the suit had never been brought***"), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); ***Bomer v. Ribicof***, 304 F.2d 427, 428 (6th Cir. 1962) (dismissal of an action without prejudice leaves the situation the same as if the suit had never been brought); ***In re Piper Aircraft Distribution System Antitrust Litigation***, 551 F.2d 213, 219 (8th Cir. 1977) (same); ***Beck v. Caterpillar, Inc***., 50 F.3d 405, 407 (7th Cir.

2. Accordingly, applying Second Circuit binding precedent and reasoning in *L-3 Comm'cs*, Id. at 18-19, the law, to the fact of the Rule 41 Final Judgment's legal and preclusive effect, as of 12/20/2007 the 2219 proceedings went moot; and all prior orders, proceedings, and judgments therein were **viitated and annulled**.[4]

3. The Court in *L-3 Comm'cs*, Id. observed that the law is not in doubt or debate regarding the legal effect of the 12/20/2007, Dkt. 90, "voluntary [Rule 41(a)(2)] dismissal," noting that "*it is hornbook law*" that all prior orders, proceedings, and judgments entered in 2219 have been **annulled**, and vitiated, and the 2219 court lacks jurisdiction over the subject matter "as if the [2219 lawsuit] had never been filed."

Rule 60(b)(4) re Lack of Article III and 28 USC 1332(a) diversity subject matter jurisdiction over the Criminal Usury Subject Matter, GX 1-4, and GX 5, and Dkt. 50 (GX 7), 54, 58 (GX 11), 65 (GX 24), 80, 102, 120, 137, 141, and 151.

**(I)     The Court of Appeals for the Second Circuit's legal standard for Rule 60(b)(4) relief.**

---

1995) (same); *EEOC v. W.H. Braum, Inc.,* 347 F.3d 1192, 1201 (10th Cir. 2003) (same); *In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) (same); *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment, Inc.,* 434 F.3d 320, 324 (5th Cir. 2005) (same); *City of South Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) (same; "any future lawsuit based on the same claim [is] an entirely new lawsuit" (internal quotation marks omitted)); *Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 86 (1st Cir. 1990) (same; "**the page is once again pristine**").

[4] See *A.B. Dick*, 197 F.2d 501-02 ("And this action of the court—granting the plaintiff's motion to dismiss the lawsuit [cf., Dkt. 90 in 2219, the Rule 41 Final Judgment], was the equivalent of vacation of the judgment theretofore entered [see 02cv2219 orders and judgments that were vacated—that is, Dkt. 50 and Dkt. 54 (GX 7), Dkt. 58 (GX 11), Dkt. 65 (GX 24), Dkt. 80] and the subsequent, Dkt. 102, Dkt. 120, Dkt. 137, Dkt. 141, and Dkt. 151], (the "**Moot Orders**")], in the case [02cv2219] in the plaintiff's favor, so that, perhaps, the [2219] court would have been well advised to have entered on its own motion an order vacating that judgment. See *Ericson v. Slomer*, 7 Cir., 1938, 94 F.2d 437, 439. The reason for this is that voluntary dismissal of [the 2219 lawsuit] suit **leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought**, *Maryland Casualty Co. v. Latham*, 5 Cir., 1930, 41 F.2d 312, 313, thus vitiating and **annulling all prior proceedings and orders in the case, and terminating jurisdiction over it for the reason that the case has become moot**. *Bryan v. Smith*, 7 Cir., 1949, 174 F.2d 212, 214, 215." (emphasis added).

(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6)(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

Fed. R. Civ. P. Rule 60(b)(4) authorizes a federal court to vacate a judgment where (i) the entering court lacked subject matter jurisdiction, or (ii) the court violated due process of law in entering its judgment.

A judgment is void if it is "so affected by a fundamental infirmity [the exercise of Article III jurisdiction over the Criminal Usury Subject Matter—the lack of an Article III justiciable controversy] that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 270 (2010). Accordingly, for purposes of Rule 60(b)(4), "jurisdiction" refers to the court's adjudicatory authority. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010); see also *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1985); 12 Moore's Federal Practice § 60.44[2][a] (2019).

The Court's subject matter jurisdiction precedents all hold that the federal courts' authority—the "power to declare the law," is the "threshold matter" that *every* federal court is required to "sua sponte" determine for itself, even in not noticed by the parties, "prior to" addressing the merits of the claims, see *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 89, 93-95 (1998) ("subject-matter jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case" (emphasis in original)); *Landgraf v. USI Film Products,* 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties' " (quoting *Republic Nat. Bank of Miami v. United States,* 506 U.S. 80, 100 (1992) (THOMAS, J., concurring))).").

In fact, for all intents and purposes, a motion to vacate a default judgment as void `may be brought at any time.'" *Beller Keller v. Tyler* 120 F.3d 21, 24 (2d Cir. 1997), (quoting 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.44[5][c] (3d ed. 2003)). *McLearn v. Cowen Co*., 660 F.2d 845, 848 (2d Cir. 1981); *Crosby v. The Bradstreet Co*., 312 F.2d 483, 485 (2d Cir. 1963) (**judgment vacated as void thirty (30) years after entry**).

**Conclusion.**

Judge McMahon, Petitioner, the Prevailing Party to the Rule 41 Final Judgment, has but one legitimate purpose in this litigation—that is, to vindicate his legal rights vis-à-vis Judge Sand's 12/20/2007 Rule 41(a)(2) *voluntary* dismissal of the 2219 lawsuit, *after the statute of limitation had run on all claims in the 2219 lawsuit*, which Second Circuit precedents, *L-3 Comm'cs*, Id. and *A.B. Dick*, Id., support the *good faith* legal basis for Petitioner's requested relief apropos this Letter Brief and the prior filings made in 2219.

Sunday, December 25, 2022
(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6)(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

If the Court would take a few moments of its busy schedule to address and clarify the issues raised herein, the parties in interest—Petitioner, the 2219 plaintiffs, and the United States (GX 1-4, and GX 7, GX 11, and GX 24), the appellate Courts will have a perfected record to enable meaningful appellate review, if necessary, without delays of a remand to the District Court required by an incomplete record.[5]

Accordingly, respectfully, Petitioner requests:

(1) that the District Court stay Dkt. 137 (show cause order) and Dkt. 151 (Order) *pending* a written response from the United States Attorney (SDNY) and the 2219 plaintiffs—the alleged Article III adverse party-plaintiffs, regarding their positions on the ***mootness*** ("concrete adverseness"), and ("concrete injury in facts") apropos the 2219 proceedings, orders, and judgments per Second Circuit binding authority,[6] *and/or*

*(2) sua sponte vacate all proceedings, orders, and judgments entered in 2219, nunc pro tunc, March 20, 2002, the filing date of the 2219 complaint* per Second Circuit binding authority ***L-3 Comm'cs***, Id. at 18-19; ***A.B. Dick***, Id. at 501-02; and ***Adar Bays LLC v. GeneSys ID, Inc.,*** 28 F.4d 379 (2d Cir. 2022); the entry of the Rule 41 Final Judgment, Dkt. 90 (December 20, 2007), and FINRA's May 17, 2021, certification of ***unregistered broker-dealer status*** for each 2219 plaintiff on February 2, 2001 (the formation of the Criminal Usury Subject Matter), March 20, 2002 (the filing date of the 2219 complaint), and May 19, 2019, (the entry of Dkt. 120); and/or

(3) pursuant to the ***DOJ's Rules of Professional Conduct***, Rules 3.3 (a), (b), and (c), Duty of Candor to the Tribunal, order Andre Damian Williams, Jr., the U.S. Attorney (SDNY), to file a Declaration into the Court regarding the matters raised herein this Letter Brief, in Dkt. 145, and in Dkt. 148.


Respectfully submitted,

/s/ Ulysses T. Ware

---

[5] Petitioner is unaware of any filing(s) made by the *adverse* party-plaintiffs (the 2219 plaintiffs and the United States) in regard to Petitioner's Rule 12(h)(3) motion, Dkt. 144 (Notice of Rule 12(h)(3) motion), and Dkt. 145 (Rule 12(h)(3) motion). Petitioner is respectfully requesting that the District Court direct Petitioner to the adverse party-plaintiffs' filings in opposition to the Rule 12(h)(3) motion, Dkt. 145.

[6] See ***Adar Bays LLC v. GeneSys ID, Inc.,*** 28 F.4d 379 (2d Cir. 2022); ***L-3 Comm'cs***, Id., and ***A.B. Dick***, Id.

Sunday, December 25, 2022
(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

# CERTIFICATE OF SERVICE

Ulysses T. Ware and Group Management served the individuals listed below via email with a copy of this Letter Brief on December 26, 2022.

cc:     Office of the U.S. Attorney General (Merrick B. Garland)
        Office of the Director of the FBI
        Executive Director, Administrative Office of the U.S. Courts
        The Supreme Court of the United States, Office of the Judicial Congress of the United States
        Office of the United States Attorney (SDNY)
        Office of the Chief District Judge (SDNY), Laura Taylor-Swain, personally.
        District Judge Edgardo Ramos (SDNY), personally
        Office of the U.S. Attorney General
        Office of the Chief Bankruptcy Judge (NDGA), Wendy L. Hagenau, personally
        The State Bar of Georgia, Office of the General Counsel
        Office of the United States Attorney (EDNY)
        U.S. Bureau of Prisons (Warden, MDC, Brooklyn, NY)
        The Wall Street Journal
        The New York Times
        J. Henry Walker, IV (representative of the 02cv2219 plaintiffs)
        John W. Mills, III
        Edward T. M. Garland for Garland, Samuel, & Loeb, P.C., and Michael F. Bachner, Esq.
        The Securities and Exchange Commission
        Sims W. Gordon, Jr.
        Thomas J. Leghorn
        Marlon G. Kirton
        The Conviction Integrity Committee of the Office of the United States Attorney (SDNY).
        Daniel Gitner, and Margaret M. Garnett, personally
        Andre Damian Williams, Jr, personally
        Colleen McMahon, personally via the Office of the Chief District Judge (SDNY)
        Debra Ann Livingston, personally via the Office of the Chief District Judge (SDNY)
        Office of the Solicitor General of the United States (via U.S. mail).
        Law Office of Kenneth A. Zitter, Esq. (via U.S. mail)

/s/ Ulysses T. Ware

Sunday, December 25, 2022
(16) re 02cv2219 (SDNY) App for administrative clarification, and request to file Rule 6(b)(4) motion to vacate Dkt. 151 as moot-- for lack of Article III subject matter jurisdiction, and void for lack of due process of law.

23-865/23-869

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

ALPHA CAPITAL, AG, et al.,

*Unregistered broker-dealer/RICO loan sharking/money laundering/ Hobbs Act Murder-for-hire CCE*

Plaintiffs,

-against-

02 civ. 2219 (CM)

GROUP MANAGEMENT CORP., et al.,

Defendants.

**Appx 57**

*Business Intelligence Group Doc. #00019821CM/FVS*

———————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/22/2022

BAR ORDER DIRECTING THAT THE CLERK NOT ACCEPT
FOR FILING ANY FURTHER DOCUMENTS FROM ULYSSES
T. WARE, DENYING ALL OUTSTANDING MOTIONS AND
CLOSING THE FILE IN THIS CASE PERMANENTLY

McMahon, J.:

*McMahon knew that she and her spouse, Frank V. Sica, had been exposed for their RICO loan sharking/money laundering/obstruction of justice crimes, and while lacking all jurisdiction over 02cv2219, desperately, entered this bogus, fraudulent, moot, and ultra vires bogus purported court order to protect her and Sica's money.*

Ulysses T. Ware has responded to the court's order to show cause why he should not be barred from filing further documents in this matter without leave of court by filing hundreds of pages of documents – most if not all of which have already been filed in connection with one or more of the many motions he has made in his two decade long quest to keep this long-ago-resolved matter alive. Nothing filed by Mr. Ware makes any sense; nothing explains why he should be allowed to continue to pester a busy court with his repeated filings; his only real response to the order to show cause was to move for "clarification" of a perfectly clear order of the court. He has also asked the court to recuse itself.

This court has no connection with this matter (which I inherited from Judge Sand upon his death in 2019, over a decade and a half after this matter was resolved). Mr. Ware does not allege that the court has any financial interest in (or, for that matter, any knowledge of or about) any of the parties to the case; conflicts checks performed upon receipt of the case and again upon receipt of these motions reveal none. Furthermore, not only have we checked my current financial interests; my conflicts team has gone back and reviewed my 2002 and 2003 financial disclosure report and ascertained that I had no financial interest in any of the parties to this case at that time (even though it was not assigned to me at that time). There is no basis for this court to recuse itself from this matter, so to the extent they seek my recusal, the motions at Docket Number 145 and 146 are DENIED.

As nothing in Mr. Ware's voluminous filings and multiple motions demonstrates good cause for allowing him to persist in trying to keep this long-closed matter alive, the court hereby

*On Dec. 22, 2022, McMahon knew that the 02cv2219 (SDNY) plaintiffs on Dec. 20, 2007, Dkt. 90, had voluntarily, after the statute of limitations had run on all claims, dismissed 02cv2219 with prejudice pursuant to Fed. R. Civ. P. 41(a)(2); yet McMahon and Sica being in a desperate situation--about to charged, indicted, and arrested for RICO loan sharking and money laundering, McMahon entered Dkt. 137, 141, and 151 to conceal, suppress, and cover up her and Sica's RICO loan sharking/money laundering crimes.*

ORDERS that Ulysses T. Ware is and shall be barred from filing any paper in *Alpha Capital et al., v. Group Management, et al,* Docket Number 02 Civ. 2219, without first obtaining leave of court; that the Clerk of Court shall not accept for filing and shall not docket any further filings in this matter, which shall be permanently closed; that the Clerk shall mark the motions at Dockets No. 133, 144, 145, 147, 146 and 149 DENIED and close them and remove them from the court's list of open motions forthwith. McMahon's Hobbs Act threats to intimidate Mr. Ware from exercising his legal and constitutional rights as the prevailing party to Dkt. 90.

If Mr. Ware attempts to prolong this by filing further papers, or if he baselessly seeks leave of court to do so, he is warned that he may be held in contempt of court, and that he may be referred to the Grievance Committee of this Court or the Disciplinary Committee of any Department in which he is admitted to practice.

Dated: December 22, 2022

BY ECF TO ULYSSES T. WARE

Prepared by Business Intelligence Group Public Corruption Investigations.

Colleen McMahon, Tailwind Capital Management LLP, Frank V. Sica, LH Financial Services, Loeb & Loeb, LLP, Mitchell Nussbaum. Charles Ellis Schumer, Robert B. Schumer, Paul, Weiss, et al., LLP, Wendy L. Hagenau, Atlanta, GA law firm, Kilpatrick, Townsend, & Stockton, LLP, Baker & McKenzie, LLP, mob boss Ari Rabinowitz, master forger Konrad Ackermann, convicted felon Edward M. Grushko, David N. Kelley, Alexander H. Southwell, Maria E. Douvas, Nicholas S. Goldin, Katherine Polk-Failla, Edgardo Ramos, Laura Taylor-Swain, Debra Ann Livingston, Amalya L. Kearse, Robert D. Sack, Preet Bharara, Sarah E. Paul, Melissa Childs, Daniel Gitner, Margaret M. Garnett, Jun Xiang, Won Shin, Damian Williams, Merrick B. Garland, Lisa Monaco, Vanita Gupta, Breon Peace, Nina Gupta, Thomas W. Thrash, Jr., Kenneth A. Zitter, Jeffrey B. Norris, Leonard A. Churn, Vanessa G. Beckett, Bridgett Hallman, Andrea Johnson, and others are required to be immediately arrested, indicted, prosecuted and convicted for Hobbs Act crimes of violence--kidnapping, attempted armed robbery, murder-for-hire, attempted murder, extortion, money laundering, conspiracy, racketeering, obstruction of justice, unlawful debt collection activities related to GX 1-4, and GX 5 (04cr1224) (SDNY) trial exhibits.

See McMahon's 02cv2219 (SDNY) Hobbs Act threats of violence against Appellant in her fake, moot, ultra vires orders, Dkt. 137, 141, and especially see Dkt. 151 McMahon's criminal, vile, evil, depraved, unconstitutional, and criminal, obstruction of justice RICO predicate offense to seal the 02cv2219 case to cover up her and Frank V. Sica's RICO crimes.

by Jackson Walker attorneys, including Jones' girlfriend and housemate, Elizabeth Freeman.

17.  Furthermore, Defendant Jones admitted in his Order that the McDermott bankruptcy proceedings were over and had been finalized.  At that point, Defendant Jones lacked jurisdiction over Plaintiff should Plaintiff make *any* claim against McDermott, its current or former employees or any other person or entity.

18.  Furthermore, Defendant Jones' Order 1 presupposes that any future Plaintiff motion to remand any case that was removed to Jones' court pursuant to Jones' illegal, unconstitutional, Order 1 would be denied by Jones so as to keep the case illegally and unconstitutionally before Jones. Cf., McMahon's moot order, Dkt. 151.

19.  Finally, Defendant Jones' Order 1 threatens Plaintiff with sanctions without a hearing should Plaintiff be forced to appear before him in a non-bankruptcy case in the future.  And Jones' fails to state what "the current pattern of behavior" refers to. Cf., McMahon's Dkt. 151 vile, fake, moot, and depraved order.  During a motion hearing held on August 9, 2021, the adversary proceeding defendants (Dickson, Lamb and Spence), through their attorneys, each told Defendant Jones that they were not seeking monetary sanctions against the Plaintiff for any reason.  None of the adversary proceeding defendants currently work for McDermott.

20.  Plaintiff appealed Jones' Order, including Order 1, to District Court.  Case Number 4:21-cv-03369 was heard by district judge Andrew Hanen.  On

7

January 9, 2023, Judge Hanen denied Plaintiff's appeal. In his appeal, Plaintiff had

complained about Jones' Order 1. Judge Hanen's January 9, 2023, Order

dismissing Plaintiff's appeal did not address Plaintiff's appeal concerning the

unconstitutionality of Order 1. (The unconstitutionality of Order 1 is the only item

of Plaintiff's appeal that was not addressed by Judge Hanen in his January 9, 2023,

Order.) Plaintiff timely made a motion for rehearing in which he asked Judge

Hanen to address only the constitutionality of Order 1. Judge Hanen denied

Plaintiff's motion for rehearing on August 30, 2023.

21. The action of Defendant Jones in issuing Order 1 violated Plaintiff's

Constitutional rights including, but not limited to, Plaintiff's First, Fifth and

Fourteenth Amendment Constitutional rights of equal access to the courts, a fair

hearing, association, assembly, speech, due process, equal protection of the laws

and the right to be free from retaliation.

See Ramos', McMahon's, and Hagenau's bogus
orders, and orders of Pauley, Sweet, Sand, and the
Court of Appeals bogus sanction orders.

22. The conduct of Defendant Jones towards the plaintiff as described

herein was wanton, willful and done with malice.

23. The Plaintiff was damaged by Defendant Jones' actions described

herein including, but not limited to, because he suffered a loss of his civil rights,

because he was no longer provided equal access to the courts, because he

experienced pain and suffering, because he experienced emotional distress and

because he suffered monetary losses.

See Appellant's Declarations of Irreparable Harms filed in 23-865/23-869.

8

**Plaintiff's Bivens Claim Against Defendant Jones**

24. The above paragraphs are incorporated herein.

25. Defendant Jones violated Plaintiff's Constitutional rights as described above.

26. When Defendant Jones violated Plaintiff's Constitutional rights, he was a federal officer acting under color of federal authority.

27. Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy for the unconstitutional actions of Defendant Jones against him.

28. An appropriate remedy, namely damages, can be imposed against Defendant Jones for his unconstitutional actions against the Plaintiff.

29. Plaintiff sues Defendant Jones in his personal capacity with regard to Plaintiff's Bivens claim against Defendant Jones.

30. Plaintiff was damaged by Defendant Jones' actions including, but not limited to, because he suffered a loss of his civil rights, because he was no longer provided equal access to the courts, because he experienced pain and suffering, because he experienced emotional distress and because he suffered monetary losses.

31. Plaintiff seeks compensatory and punitive damages against Defendant Jones in an amount to be decided by the trier of fact.

## Plaintiff's Request For Injunctive Relief Against Defendant Jones.

32.  The above paragraphs are incorporated herein.

33.  In addition to Plaintiff's Bivens claim against Defendant Jones, Plaintiff asks this Court to enjoin Defendant Jones from enforcing the illegal, unconstitutional, Order 1 against the Plaintiff.

34.  Plaintiff sues Defendant Jones in his official capacity in his request for Defendant Jones to be enjoined from enforcing the illegal, unconstitutional, Order 1 against the Plaintiff.

## Plaintiff's Request For Declaratory Relief Against Defendant Jones.

35.  The above paragraphs are incorporated herein.

36.  In addition to Plaintiff's Bivens claim and request for injunction against Defendant Jones, Plaintiff asks this Court pursuant to FRCP Rule 57 and 28 U.S.C. § 2201 to issue a Declaratory Judgment stating that Order 1 issued by Defendant Jones violates Plaintiff's Constitutional rights.

37.  Plaintiff sues Defendant Jones in his official capacity in his request for a Declaratory Judgment against Defendant Jones.


WHEREFORE, plaintiff prays for judgment against Defendant Jones as described herein.

Respectfully submitted:

Michael D. Van Deelen

Michael D. Van Deelen

APPENDIX A

## Corruption Involving Judge David R. Jones
## (Chief Bankruptcy Judge for the U.S. Bankruptcy Court for the
## Southern District of Texas)

**Background:**

As the Chief Bankruptcy Judge for the U.S. Bankruptcy Court for the Southern District of Texas, David R. Jones has had a romantic relationship with Elizabeth Carol Freeman (TX Bar No: 24009222) who worked as his law clerk for 6 years. After Freeman left her clerk position with Judge Jones, she took on the position as a partner for Jackson Walker LLP (JW) in its Houston office along with Matthew D. Cavenaugh (TX Bar No: 24062656). Both Elizabeth and Matthew and other JW partners set up an organization to assist bankruptcy clients.

**Corruption:**

The court that Judge Jones works in receives all the bankruptcy files in the area and consequently all the cases that come from clients of JW go directly into his hands.

What is concerning is that there is clearly a conflict of interest. Instead of taking these particular lawsuits involving JW clients, he should instead not take on those cases to avoid a conflict of interest.

The romantic relationship between Judge Jones and Elizabeth Freeman is publicly known and because of that, the largest corporations and clients willingly choose to work with JW lawyers knowing that they will likely have the court and the judge in their favor.

There are two main factors that cause corruption and bias:

1. Elizabeth Freeman is the strategic link between JW attorneys (specifically Matthew Cavenaugh) and lawsuits received by Judge David Jones.
   a. Due to this, the third parties involved with bankruptcy lawsuits realize that they will likely be faced with unjust decisions and bias caused by an obvious conflict of interest.

2. Judge Jones receives a high number of cases that come from JW attorneys and clients.
   a. Many of these cases end in a decision that favors JW clients without justice.

**Request:**

In order to bring justice to this situation, I request for there to be an investigation of this corrupt case. I am positive that when a fair investigation takes place on attorneys relating to all lawsuits that involve Elizabeth Freeman, JW attorneys, and Judge Jones, that there will be clear evidence of biased decisions made because of a conflict of interest.

This is essential to avoid future victims of corruption in the hands of Judge David R. Jones.

Ownership History

Current Owner

**Elizabeth Carol Freeman**

**David R Jones**

Jun 27, 2017

**OWNERSHIP DETAILS**

Document Number

284445

Sale Date

Jun 26, 2017

Recording Date

Jun 27, 2017

Ownership Relationship Type

Single Woman

Absentee Indicator

Situs Address Taken From Sales Transaction - Determined Owner Occupied

Deed Securities Category

New Structure Sale, Cash Purchase, Residential (Modeled)

Universal Land Use

Residential (NEC)

Property Indicator

Single Family Residence/Townhouse

Resale New Construction

New Construction

Residential Model Indicator

Based On Zip Code and Value Property is Residential

Title Company

VERITAS TITLE INC

Owner

Elizabeth Carol Freeman

David R Jones

Seller

Quintessa Homes & Props Lp

Assessed Value

Ownership History

⊗ Remove



Westview Terrace

4 beds | 2 baths | 3786 sq/ft

**VIEW LOCATION REPORT**

Current Owner

**Elizabeth Freeman**
**David R Jones**
Jun 27, 2017

| Assessed Value | Mortgage Amount | Sale Amount | Tax Amount |
|---|---|---|---|
| **$1,071,848.00** | **Cash Purchase** | **$133,000.00** | **$26,168.85** |
| 2022 | Jun 27, 2017 | Jun 26, 2017 | 2022 |



## David Ronald Jones

61 years old (approximate)

VIEW BACKGROUND REPORT

## Phone Numbers

## Shared Locations

David Ronald Jones and Elizabeth Carol Freeman may have shared this address from Jun 27, 2017 to Jun 05, 2023 for **5 years 11 months 14 days**

VIEW LOCATION REPORT

## OWNERSHIP HISTORY

This section includes information about the ownership history at this location.

Cape Royale The Reserves #1

3 beds | 3 baths | 4351 sq/ft

Current Owner

**David Jones**

Sep 13, 2016

| Assessed Value | Mortgage Amount | Tax Amount |
|---|---|---|
| **$1,465,924.00** | **Cash Purchase** | **$28,608.97** |
| 2023 | Sep 13, 2016 | 2023 |

## RESIDENTS

This section contains residents for this location.

POSSIBLE PAST RESIDENTS FOR █████████████

| Name | Age | Date First Seen | Date Last Seen |
|------|-----|-----------------|----------------|
| April Yvonne Freeman | 73 | Oct 5, 2020 | Jul 3, 2023 |
| Elizabeth Carol Freeman | 51 | Feb 7, 2007 | Jun 19, 2023 |
| Burton Ray Freeman | 75 | Jul 1, 2020 | Nov 22. 2022 |
| Nicole Maria Miller | 29 | Sep 6, 2021 | Sep 6, 2021 |
| Samuel Herbert Adams | 88 | Sep 8, 1964 | Sep 30, 2021 |
| Emily K Freeman | 46 | Dec 9, 2020 | Dec 9, 2020 |

## Jones David R

Sep 13, 2016

### OWNERSHIP DETAILS

Document Number

5086

Sale Date

Sep 1, 2016

Recording Date

Sep 13, 2016

Absentee Indicator

Owner Occupied

Universal Land Use

Single Family Residence

Property Indicator

Single Family Residence

Residential Model Indicator

Property is Residential

Owner

Jones David R

Seller

Adams Samuel H II & Joan P

# 23-865/23-869

United States Courts
Southern District of Texas
F I L E D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OCT 04 2023

Nathan Ochsner, Clerk of Court

confidential internal investigation resource--
IRNewswires

Michael D. Van Deelen, )
)
Plaintiff, )
)
vs. )
)   Case No. 4:23 - Cv-03729
)
David R. Jones )
)   **Appx 56**
)
Defendant. )

See District Judge (SDNY) Colleen McMahon's egregious 28 USC 455(b)(1-5) conflict of interest in
02cv2219 (SDNY), Dkt. 120, 137, 141, and 151 regarding her alleged spouse, Frank V. Sica, her and his
company Tailwind Capital Management LLP's investments in RICO criminal usury, RICO 18 USC 1961(6)
(B) unlawful debts.

## COMPLAINT

See Wendy L. Hagenau's crimes, Dkt. 28, 256, 274, and 275, to protect Atlanta, GA law firm Kilpatrick,
Townsend, & Stockton, LLP from Chapter 7 liquidation for crimes committed in 03-93031 (NDGA)

COMES NOW the Plaintiff, Michael D. Van Deelen, and sues the above-named

Defendant and as grounds therefore alleges:

1. This action arises under the United States Constitution as detailed herein.

2. This court has jurisdiction over this action under 28 U.S.C. § 1331

because it is a civil action arising under the Constitution.

3. Plaintiff, Michael D. Van Deelen, is a citizen of the United States of

America who presently resides at ███████████████████

4. At all times material herein, Defendant Jones was an Article 1 bankruptcy

judge in the United States District Court for the Southern District of Texas,

Business Intelligence Group: ref. 00014213 re: Cf., 02cv2219 (SDNY),
Dkt. 120, 137, 141, and 151 conflict of interest of District Judge Colleen
McMahon and her spouse's personal ownership of RICO criminal usury,
unlawful convertible promissory notes debts.

pages 001-019

Houston Division. He may be served with process at 515 Rusk Avenue Houston, TX 77002.

5. Venue is proper because the Plaintiff and the Defendant are residents of Texas and because the actions or omissions giving rise to Plaintiff's claims all occurred in Texas.

**Background**

6. The following is based on information and belief.

7. McDermott International declared bankruptcy on January 21, 2020. The case, 4:20-bk-30336, was filed in the Southern District of Texas Bankruptcy Court, Houston Division. The chief bankruptcy judge in the Houston Division was, and is, Defendant David Ronald Jones. McDermott was represented by Jackson Walker, LLC. One of the Jackson Walker attorneys working on the case was Elizabeth Carol Freeman. Freeman had clerked for Defendant Jones for six years prior to joining Jackson Walker.

8. When Freeman was assigned to the McDermott case and during the entirety of the case, she was the live-in girlfriend of Defendant Jones. On March 6,

Cf., that Frank V. Sica is Colleen alleged spouse and both live in the same residence according to financial filing made under oath with the Administrative Office of the U.S. Courts

2021, Plaintiff received an anonymous, unsigned letter via U.S. mail home delivery, (Exhibit A1 herein). The letter complained of alleged corruption between Defendant Jones, Jackson Walker and Freeman in a scheme in which corporate

Cf., with the corruption scam run by Chief Bankruptcy Judge (NDGA) Wendy L. Hagenau, District Judge (SDNY) Colleen McMahon, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Baker & McKenzie, LLP, and Damian Williams, the U.S. Attorney (SDNY) regarding the cover up of Alpha Capital, AG/LH Financial Services Hobbs Act , RICO money laundering/extortion/murder-for-hire, attempted armed robbery, kidnapping, bankruptcy fraud conspiracy, and loan sharking crimes committed in 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY).

cf, Colleen McMahon's relationship with Frank V. Sica, her alleged spouse and their personal ownership of +$22 million in criminal usury convertible promissory notes--the same subject matter as the 02cv2219 (SDNY) lawsuit, 03-93031 Chapter 11, 04cr1224, and 05cr1115 (SDNY) retaliatory RICO unlawful debt collection lawsuits and prosecutions, GX 1-4, and GX 5 (04cr1224) trial exhibits.

bankruptcy filers would hire Jackson Walker to represent them and then get favorable treatment from Defendant Jones because of his amorous relationship with Freeman. Defendant Jones subsequently denied that he had a romantic relationship with Freeman.

Colleen McMahon and Frank V. Sica are reported to be a married couple in 2016 and was a married couple when McMahon entered Dkt. 120, 137, 141, and 151, and are currently a married couple, a relationship within the scope of 28 USC 455(a), 455(b)(1-5).

9. Defendant Jones and Freeman not only had a romantic relationship, *they lived together*. Exhibit A2 shows that Defendant Jones and Freeman have jointly owned a house between June 27, 2017, and the present. The house was valued in excess of one million dollars in 2022 (Exhibit A3). Exhibit A4 states that Defendant Jones and Freeman may have shared the home between June 27, 2017, and June 5, 2023, well before the McDermott bankruptcy began and long after it ended on June 30, 2020.

10. The tryst may have begun before June 27, 2017. Exhibits A5 and A6 show that on September 13, 2016, Defendant Jones bought the house in Coldspring, Texas, that Freeman *currently lived in* and had been living in since February 7, 2007. Exhibit A6 further shows that, in 2020, two people, probably Freeman's parents, moved into the house. Exhibits A5 and A7 show that Defendant Jones still owns the house and that when Defendant Jones purchased the house, he gave his address as 515 Rusk Street in Houston, Texas, the United States District Courthouse where Defendant Jones worked. Exhibit 7 lists the status of

3

McMahon assigned herself the 02cv2219 (SDNY) in 2016 to cover up and protect her and her spouse's pecuniary and penal interests from being placed in legal jeopardy resulting from litigation regarding GX 1-4, and GX 5, cf., Dkt. 120, 137, 141, and 151---ultra vires, null and void ab initio fake judicial orders entered by McMahon to protect her and her spouse's +$22 million pecuniary personal interests.

the house after Defendant Jones purchased it as "owner occupied" which means

that Defendant Jones shared the house with Freeman.

11.   Instead of personally avoiding the McDermott bankruptcy case because

McMahon did not reassigned 02cv2219 (SDNY) once it became known that she and Sica personally made investments in the same type of subject matter as, GX 1-4, GX 5, RICO criminal usury, convertible promissory notes having a floating price conversion option.

of his relationship with Jackson Walker attorney Freeman, Defendant Jones, in

McMahon doubled down and became even more defiant, see Dkt. 141 and 151, and threaten Mr. Ware the same as defendant Jones threaten plaintiff Deelen as alleged in this complaint.

keeping with the allegations raised in Exhibit A1, assigned the case to himself.

12.   On June 24, 2020, Plaintiff filed a state court suit against McDermott

employees David Dickson, Stuart Spence and Scott Lamb in Montgomery County,

Texas, District Court (case number 20-06-07348).  The allegations against the

defendants were conversion, common law fraud, statutory fraud, negligent

misrepresentation, breach of fiduciary duty and conspiracy.  The defendants,

represented by Jackson Walker, removed the case to Defendant Jones' bankruptcy

court.  In Adversary Proceeding 20-3309, Plaintiff then moved to remand the case

back to state court.

13.   During the adversary proceeding, Plaintiff received the anonymous

letter accusing Defendant Jones, Jackson Walker and Freeman of improprieties

(Exhibit A1).  Plaintiff filed Exhibit A1 as part of his motion to recuse Defendant

Jones.  Prior to the hearing on the motion, Defendant Jones failed to disclose that

he had a romantic or cohabitation or any other type of relationship with Freeman.

The only evidence Plaintiff had to present at the hearing was Exhibit A1.  (Plaintiff

did not discover that Defendant Jones and Freeman shared houses and co-owned a

4

house until only recently when he obtained *Truthfinder* software.) Due to the uncorroborated nature of Exhibit A1 and Defendant Jones' failure to disclose his relationship with Freeman, Plaintiff's motion to recuse was denied by Judge Isgur on March 10, 2021, without the issuance of findings of fact or conclusions of law.

14. Subsequent to the dissemination of Exhibit A1, including Plaintiff's filing it into his adversary case, Freeman, who was a partner at Jackson Walker, left Jackson Walker without fanfare or a press release. She began a solo act from scratch without as much as even a physical office. Her advertised "location" was a P.O. Box in downtown Houston. Plaintiff believes Freeman went from being a partner at a large firm to a solo practitioner working out of a post office box because the relationship between her and Defendant Jones was made generally known as the result of the distribution of Exhibit A1 by an unknown party and by Plaintiff in his filings and because she was made the scapegoat of the improper scheme by Jackson Walker. It is believed that Freeman has recently opened a solo practice at ███████████████████ This is approximately one-half mile from the house that Defendant Jones bought and shared with her on Ridge Lane on September 13, 2016, as seen above.

15. On October 12, 2021, Defendant Jones issued his Order denying

Cf, McMahon's 02cv2219 (SDNY) Dkt. 120, 137, 141, and 151; cf.; Hagenau's (03-93031)(BC NDGA), Dkt. 256, 274, and 275; cf., Ramos' (22cv3409)(SDNY) Dkt. 126, 212, and 213.

Plaintiff's motion to remand. In retaliation for "outing" Defendant Jones and his paramour Freeman, Defendant Jones' Order, after stating that "The McDermott

Cf., McMahon's Dkt. 137, 141, and 151, and cf., Hagenau's (03-93031 (BC NDGA), Dkt. 256, 274, and 275; and cf, Edgardo Ramos' Dkt. 126,³and 212, 213 (22cv3409)(SDNY), all bogus, moot, retaliatory in nature fake judicial orders entered against Ulysses T. Ware for "outing" McMahon's and Sica's RICO money laundering/loan sharking crimes and corruption.

Ramos, Dkt. 126, 212, 213, (22cv3409), Hagenau, Dkt. 256, 274, and 275 (03-93031), and McMahon, Dkt. 120, 137, 141, and 151 (02cv2219) all entered similar, fake, ultra vires, moot judicial orders to conceal and suppress LH Financial Services/Ari Rabinowitz/Alpha Capital, AG (Anstalt)'s Hobbs Act, violent crimes, RICO loan sharking/murder-for-hire/extortion/kidnapping, attempted armed robbery, and unlawful debt collection activities RICO predicate offenses.

bankruptcy case is over. The Court's confirmation order is final and binding.",

cf, McMahon's Dkt. 151, moot order's language, she emotionally, rather than rationally, made the similar threat to Mr. Ware once she and Sica were exposed.

ordered that **"*Any* further *state court litigation* brought by Mr. Van Deelen regarding *McDermott* or *these proceedings* should be removed immediately to this Court. If such litigation is initiated and the current pattern of behavior continues, the Court will *revisit* the issue of *compensatory* and coercive sanctions necessary to protect the sanctity of the Court's orders, the bankruptcy process, and the rule of law."** (Emphasis added.) In the following,

Plaintiff will refer to the above emboldened ruling made as part of Jones' October

12, 2021, Order as "Order 1".

Ramos, McMahon, and Hagenau all were similarly without jurisdiction, and all knew they lacked jurisdiction to enter orders, see Dkt. 90, Dec. 20, 2007, (02cv2219)(SDNY), Rule 41(a)(2) final order/judgment.

16. Defendant Jones lacked jurisdiction to make Order 1 and he was aware that he was without jurisdiction to make Order 1 when he made it. Order 1 made a blanket statement that any suit against McDermott made by plaintiff, regardless of its cause, would be adjudicated by Defendant Jones in his Bankruptcy court. When Jones made Order 1, Plaintiff had not sued McDermott in any court before the bankruptcy proceeding, during the bankruptcy proceeding or after the bankruptcy proceeding had been concluded. Nevertheless, Defendant Jones, an Article 1 Judge vested with jurisdiction to only hear bankruptcy proceedings, attempted to establish perpetual illegal, unconstitutional, jurisdiction over Plaintiff anytime he sued McDermott in the future. As noted above, McDermott was being represented

Cf., Hagenau's Dkt. 256, 274, and 275--as of (1) GPMT's 11 USC 365(c)(2) notice of rejection, Dkt. 9, in March 2003, and (2) as of the 02cv2219 (SDNY) plaintiffs' voluntary Dec. 20, 2007, Dkt. 90, Rule 41(a)(2) dismissal with prejudice of 02cv2219 (SDNY), Hagenau, McMahon, Ramos, the District Court (SDNY), and the Court of Appeals all lacked jurisdiction over the mooted and annulled GX 1-4, GX 5, the 02cv2219 and 04cr1224 (SDNY) proceedings.

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Ulysses T. Ware
_____

                                        **CERTIFICATE OF SERVICE***

                                        Docket Number: 23-865 and 23-869
                                                       _____

                    v.

United States, et al.
_____

I, Ulysses T. Ware
   _____, hereby certify under penalty of perjury that
        (print name)

on October 17, 2023
   _____, I served a copy of Part 21S-1, to L.R. 27-1 motion for COA,
        (date)                                      _____

Appx 57-8 re: Ulysses T. Ware's In re Edgardo Ramos Complant of Criminal Judicial Misconduct
_____
                              (list all documents)

by (select all applicable)**

___ Personal Delivery        X  United States Mail          ___ Federal Express or other
                                                                Overnight Courier

___ Commercial Carrier       X  E-Mail (on consent)  served via implied consent and acquiescence.

on the following parties:

| Damian Williams | via email/and U.S. mail | New York | NY | 10007 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Merrick B. Garland | via email to Jeffrey R. Ragsdale/and U.S. mail | Washington | DC | 20530 |
| Name | Address | City | State | Zip Code |
| Won Shin | via email/and U.S. Mail | New York | NY | 10007 |
| Name | Address | City | State | Zip Code |
| The Director of the FBI | Washington,DC | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding.  The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

October 17, 2023                    /s/ Ulysses T. Ware
_____        _____
      Today's Date                          Signature

Certificate of Service Form (Last Revised 12/2015)

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Ulysses T. Ware

**CERTIFICATE OF SERVICE***

v.

Docket Number: 23-865 and 23-869

United States, et al.

I, Ulysses T. Ware , hereby certify under penalty of perjury that
      (print name)
on October 17, 2023 , I served a copy of Part 21S-1, to L.R. 27-1 motion for COA,
      (date)
Appx 57-8 re: Ulysses T. Ware's In re Edgardo Ramos Complant of Criminal Judicial Misconduct
(list all documents)

by (select all applicable)**

___ Personal Delivery      X United States Mail      ___ Federal Express or other
                                                          Overnight Courier

___ Commercial Carrier      X E-Mail (on consent) served via implied consent and acquiescence.

on the following parties:

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Damian Williams | via email/and U.S. mail | New York | NY | 10007 |
| Merrick B. Garland | via email to Jeffrey R. Ragsdale/and U.S. mail | Washington | DC | 20530 |
| Won Shin | via email/and U.S. Mail | New York | NY | 10007 |
| The Director of the FBI | Washington,DC | | | |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

October 17, 2023                     /s/ Ulysses T. Ware
      Today's Date                              Signature

Certificate of Service Form (Last Revised 12/2015)